FEDERACIÓN DE MAESTROS DE PUERTO RICO, recurrida, *v.* MARÍA M. MOLINA TORRES, peticionaria.

*Número:* CC-2001-961     *Resuelto:* 5 de noviembre de 2003

*Cristina Alcaraz Emmanuelli*, abogada de la parte peticiona-
ria; *Raymond E. Morales, Carmen I. Motta, Raúl Santiago*
y *Sylvia Roger Stefani*, abogados de la parte recurrida.

EL JUEZ PRESIDENTE INTERINO SEÑOR REBOLLO LÓPEZ emitió la
opinión del Tribunal.

¿Tiene jurisdicción el Tribunal de Circuito de Apelacio-
nes para revisar una decisión emitida por la Comisión de
Relaciones del Trabajo del Servicio Público, mediante la
cual la referida Comisión se negó a atender, o tramitar,
una querella por alegadas prácticas ilícitas? Contestamos
en la negativa. Veamos por qué.

I

El 27 de septiembre de 2000, la Sra. María M. Molina
Torres, quien se desempeña como maestra del Departa-
mento de Educación del Estado Libre Asociado de Puerto
Rico, presentó un cargo de práctica ilícita contra la Fede-
ración de Maestros de Puerto Rico (Federación) ante la Co-
misión de Relaciones del Trabajo del Servicio Público
(Comisión). En dicho cargo ésta alegó que la Federación
había violado la Sec. 9.2(a) de la Ley Núm. 45 de 25 de
febrero de 1998 (3 L.P.R.A. sec. 1452b(a)),[1] conocida como
la Ley de Relaciones del Trabajo para el Servicio Público de
Puerto Rico, al coartarle su derecho a no estar afiliada ni
ser representada por la Federación, derecho que reconocía

---

[1] La Sec. 9.2(a) de la Ley Núm. 45 de 25 de febrero de 1998 (3 L.P.R.A. sec.
1452b(a)) dispone:

"Será práctica ilícita el que una organización de empleados o alguno de sus
miembros, actuando individualmente o en concierto con otros, realice o intente rea-
lizar cualesquiera de los siguientes actos:

"(a) Intervenir, coartar o restringir a uno o más empleados en relación con su
decisión de ejercer o no los derechos reconocidos en este capítulo."

la mencionada ley en su Sec. 4.2([2]) (3 L.P.R.A. sec. 1451c).([3])

Al explicar en detalle el cargo imputado, la señora Molina Torres señaló que, a pesar de que ésta no pertenecía a la Federación, el 11 de agosto de 2000 recibió la visita del Director de la Oficina de Quejas y Agravios de la referida organización, el Sr. Armando Soto, quien le indicó que la organización que éste dirigía era su representante exclusivo y que estaba obligada por ley a representarla en una reunión que se llevaría a cabo el 14 de agosto de 2000 en la Oficina Regional de Ponce del Departamento de Educación;([4]) según sostuvo, el señor Soto le indicó que ésta debía pagar por los servicios que la Federación le prestaría durante el referido proceso.

La señora Molina Torres se negó a recibir tal representación por entender que ello contravenía lo dispuesto en la Ley Núm. 45, ante, en cuanto al derecho de los empleados del Departamento a la no afiliación. Según sostuvo la peticionaria, *esta fue la única ocasión en que un miembro de la Federación se comunicó con ella a los fines de ofrecerle los servicios de representación de la referida organización obrera.* Molina Torres, además, señaló que:

[a] pesar de que el Sr. Soto ha[bía] visitado la Escuela Ana Valldejuly en las mañanas de los días 15 de agosto de 2000 y 15 de septiembre de 2000, no se ha[bía] comunicado [con ella, por lo que] ent[endía] que ni el Sr. Soto, ni su organización ha[bían] tenido interés en representar[la]. (Énfasis suplido.) Apéndice, Anejo D, pág. 21; Declaración jurada, págs. 1 y 2.

La reunión pautada para el 14 de agosto de 2000 fue suspendida, por lo que la señora Molina Torres fue citada a

---

([2]) Esta sección fue derogada por la Ley Núm. 96 de 7 de julio de 2001. En su lugar fueron incorporadas las Secs. 17.1 y 17.2 (3 L.P.R.A. secs. 1454 y 1454a).

([3]) La Federación de Maestros de Puerto Rico fue certificada como representante exclusivo de la Unidad Apropiada de maestros y personal docente del Departamento de Educación el 29 de noviembre de 1999.

([4]) En dicha reunión se dilucidaría una controversia surgida entre la señora Molina Torres y su compañera, la maestra Elizabeth Bermúdez; esta última sí estaba afiliada a la Federación de Maestros de Puerto Rico.

una segunda reunión, la cual se llevaría a cabo el 18 de septiembre de 2000. Ese día, cuando Molina Torres se presentó a la Oficina Regional de Ponce, se le notificó que la referida reunión había sido nuevamente suspendida. De acuerdo con las alegaciones de la peticionaria, a ésta se le informó que un representante de la Federación había notificado que "las maestras" no comparecerían. También se le informó que la Federación había solicitado la cancelación de la reunión, alegando que la situación debía ser discutida y aclarada en el plantel escolar. Finalmente, se le indicó que la señora García Crespo, Directora de la Escuela Valldejuly, había recibido ciertas directrices y que ésta se estaría reuniendo con las partes para comunicarlas. Según se le informó, si luego de celebrada la reunión alguna de las partes quedaba inconforme, dicha parte debía someter su querella ante el Director de la Oficina de Asuntos Laborales.(⁵)

Ante tales circunstancias, la peticionaria presentó ante la Comisión los cargos antes descritos, alegando que la Federación pretendía representarla sin su autorización, violando así lo dispuesto en la Sec. 4.2 de la Ley Núm. 45, ante.(⁶) La Comisión refirió el asunto a uno de sus agentes quien, luego de realizar la correspondiente investigación, emitió un informe recomendando la desestimación del cargo imputado.

Al fundamentar su determinación, *el agente investigador sostuvo que no existía ninguna evidencia indicativa de que la Federación hubiese solicitado la suspensión de la reunión de 18 de septiembre de 2000 con la intención de violar los derechos de la querellante.* De este modo, dio entero crédito a las alegaciones de la Federación a los efectos de que la referida *solicitud había sido hecha en beneficio de*

---

(⁵) Este era el procedimiento que disponía en ese momento la Sec. 10.04 del Convenio Colectivo para la resolución de quejas y agravios, según citado en el expediente.

(⁶) Además, señaló que mantenía una relación contractual con la Asociación de Maestros de Puerto Rico, quien le proveería representación legal para asistirla en este proceso.

*la maestra unionada, ya que ésta no había sido notificada*
*con tiempo suficiente como para que pudiera estar debida-*
*mente representada,* concluyendo que la solicitud de sus-
pensión hecha por la Federación *no constituía base sufi-*
*ciente para sustentar una alegación de violación a la Ley*
*Núm. 45,* ante.

Refiriéndose específicamente al hecho de que un miem-
bro de la Federación le hubiese informado a la señora Mo-
lina que su organización sería su representante exclusivo,
el investigador expresó que existía la posibilidad de que la
Federación hubiese actuado así en el entendido de que se
trataba de un procedimiento para ventilar quejas y agra-
vios, en cuyo caso la organización tenía derecho a partici-
par en todas las etapas del procedimiento.[7]

Acogiendo la recomendación del agente investigador, la
Comisión notificó a la señora Molina Torres su determina-
ción de *no* emitir querella y procedió a desestimar el cargo
incoado, informándosele a la peticionaria que la evidencia
presentada no constituía base suficiente para emitir una
querella por los cargos alegados y que el hecho de que la
Federación hubiese solicitado la suspensión de la reunión
de 18 de septiembre de 2000 no implicaba la existencia de
violación alguna. Al fundamentar su determinación, la Co-
misión citó lo dispuesto en la Sec. 16.7 de la Ley Núm. 45,
ante, 3 L.P.R.A. sec. 1453j, al sostener que la Federación
tenía derecho a solicitar la suspensión de la reunión aquí
en controversia.[8]

Insatisfecha con tal determinación, la peticionaria pre-

---

[7] Al fundamentar su contención, el investigador citó lo dispuesto en la Sec. 4.2
de la Ley Núm. 45, ante, 3 L.P.R.A. sec. 1451c, la cual en ese momento establecía que
todos los empleados que no estuviesen afiliados a la organización obrera certificada
como representante exclusivo debían observar las disposiciones del convenio colec-
tivo en cuanto a los procedimientos para ventilar quejas y agravios, y arbitraje, y que
les aplicarían para su beneficio las disposiciones del convenio colectivo en lo que
respecta a salarios, beneficios marginales y términos y condiciones de empleo.

[8] Esta sección dispone, en lo pertinente, que "[c]ualquier empleado p[uede]
presentar una querella contra su agencia directamente a ésta cuando su represen-
tante exclusivo se haya negado manifiesta o implícitamente a hacerlo, *pero el repre-*
*sentante exclusivo tendrá derecho a ser notificado y a estar presente e intervenir en la*
*discusión de la querella".* (Énfasis suplido.) 3 L.P.R.A. sec. 1453j.

sentó una solicitud de reconsideración, la cual fue declarada "no ha lugar". En la resolución emitida a tales efectos, la Comisión determinó que el cargo presentado por Molina Torres no guardaba relación alguna con lo dispuesto en la Sec. 9.2(a) de la Ley Núm. 45, ante, como en efecto alegaba la peticionaria, sino con la Sec. 16.7, ante. Por esta razón limitó la discusión del asunto planteado a lo relativo a la Sec. 16.7, ante, negándose a evaluar el asunto bajo el prisma de la Sec. 9.2(a) de la Ley Núm. 45, ante.

La señora Molina Torres, alegando que la Comisión no había resuelto la verdadera controversia planteada, acudió ante el Tribunal de Circuito de Apelaciones mediante un recurso de revisión. Adujo que el asunto de la suspensión de la reunión —atendido por la Sec. 16.7 de la Ley Núm. 45, ante— no constituía la controversia medular del caso, sino el reclamo de que la Federación pretendía coartarle su derecho a no afiliarse ni ser representada por la referida organización obrera, asunto dispuesto en la Sec. 9.2(a) de la Ley Núm. 45, ante. Según alegó, en la evaluación que hizo la Comisión a los efectos de determinar si emitía o no una querella en contra de la Federación, no se consideró el asunto principal allí planteado, que era precisamente la violación de la citada Sec. 9.2(a).

Mediante resolución a esos efectos, el 19 de octubre de 2001 el foro apelativo intermedio *denegó* la expedición del auto solicitado, concluyendo que la determinación de emitir o no una querella por práctica ilícita es una decisión que realiza la Comisión en el ejercicio de su función investigativa y que, por no ser el resultado de un procedimiento adjudicativo formal, no está sujeta a ser revisada por los tribunales.

Inconforme, la señora Molina Torres recurrió —vía *certiorari*— ante este Tribunal, alegando que incidió el Tribunal de Circuito de Apelaciones

... al denegar la expedición del auto de revisión por falta de jurisdicción y no revisar la determinación de la Comisión de Relaciones del Trabajo del Servicio Público de no emitir querella contra la Federación de Maestros por violación a la Sec-

ción 9.2(a) de la Ley Núm. 45 de 25 de febrero de 1998. Petición de *certiorari*, pág. 4.

*Expedimos* el recurso y concedimos un término a ambas partes para que se expresaran en torno a sus respectivas posiciones. La parte peticionaria compareció, no así la parte recurrida.[9] Resolvemos, por lo tanto, sin el beneficio de su comparecencia.

## II

■ La Ley Núm. 45, ante, Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, fue aprobada con el propósito de conferirle a los empleados públicos que no estén cubiertos por la Ley Núm. 130 de 8 de mayo de 1945[10] (29 L.P.R.A. sec. 62 *et seq.*), el derecho a la organización sindical y a la negociación colectiva, siempre que se observen los parámetros establecidos en la ley. Estos parámetros se circunscriben a tres criterios esenciales, a saber: (i) acomodar, dentro de las realidades fiscales en que se desenvuelve el Gobierno, el costo correspondiente al mejoramiento de las condiciones de trabajo de los empleados públicos; (ii) evitar interrupciones en los servicios que prestan las agencias gubernamentales, y (iii) promover la productividad en el servicio público. Exposición de Motivos de la Ley Núm. 45, ante, 1998 Leyes de Puerto Rico 148.

■ Mediante la aprobación de esta pieza legislativa se creó la Comisión de Relaciones del Trabajo del Servicio Público, entidad encargada de interpretar, aplicar y hacer cumplir las disposiciones de la ley en todo lo relativo a procesos de organización, certificación, descertificación de organizaciones sindicales, procedimientos relacionados con la conciliación y el arbitraje de negociaciones de convenios

---

[9] Mediante resolución a esos efectos, el 22 de julio de 2002 le concedimos a la Federación un término de veinte días para presentar su alegato, apercibiéndole que de no recibirse el alegato dentro del término indicado, el caso quedaría sometido sin el beneficio de su comparecencia.

[10] Conocida como la Ley de Relaciones del Trabajo de Puerto Rico.

colectivos, procedimientos relacionados con prácticas ilícitas y en todos aquellos aspectos que la ley le haya delegado alguna actuación en particular. Entre las muchas facultades conferidas por la ley a esta Comisión está la de resolver controversias relativas a la aplicación de su estatuto.[11]

En lo que respecta a la controversia ante nuestra consideración, debemos señalar que esta pieza legislativa estableció el procedimiento que se ha de seguir en situaciones en que una agencia, representante exclusivo o cualquier otra persona interesada desee presentar ante la Comisión una querella imputando la existencia de una práctica ilícita. Sobre este particular, la Sec. 9.3(a) de la Ley Núm. 45, ante, 3 L.P.R.A. sec. 1452(c), dispone, en lo aquí pertinente, que siempre que una persona presente una querella mediante la cual impute la existencia de una práctica ilícita, la Comisión "llevará a cabo una investigación de los cargos imputados y preparará un informe sobre la misma". Esta sección establece que "[s]i la Comisión determina que no hay base para imputación de prácticas ilícitas, cerrará y archivará el caso mediante orden a esos efectos". Íd.

Por su parte, el Reglamento Núm. 6385 de la Comisión de Relaciones del Trabajo del Servicio Público de 28 de diciembre de 2001, en su Sec. 408, págs. 26 y 27, dispone, en lo pertinente, que:

> ... si la determinación de la Comisión es que no existe causa probable para encontrar que se violó la Ley, se le notificará a la parte que radicó el caso y se le dará la opción de retirar el mismo. Si la parte retira el caso será sin perjuicio. Si la parte no retira el caso se desestimará el mismo por escrito y con copia a las otras partes. En aquellos casos en que el promovente no esté de acuerdo con la determinación de desestimar todas o alguna de las alegaciones, tendrá siete días para solicitar reconsideración a la Comisión. El escrito de reconsideración deberá especificar todos los puntos en controversia; describir la evidencia que se alega sostiene las alegaciones; e

---

[11] Para otras facultades, deberes y responsabilidades de la Comisión, véase la Sec. 11.15 de la Ley Núm. 45, ante, 3 L.P.R.A. sec. 1452t.

ilustrar a la Comisión sobre porqué debe existir causa proba-
ble para encontrar que se ha violado la Ley.

Finalmente, procede que se enfatice que el inciso (d) de
la Sec. 408 del Reglamento Núm. 6385, ante, pág. 27, es-
tablece que "[l]as determinaciones de emitir o no una que-
rella no serán revisables ante ningún tribunal".

▪ Contrario a lo antes expuesto, si de la investiga-
ción inicial que realiza la Comisión, la cual podemos cata-
logar como "preliminar", surge que probablemente el im-
putado ha incurrido en una práctica ilícita, entonces la
Comisión deberá ordenarle a uno 'de sus abogados que re-
dacte una querella en conformidad con la determinación de
causa probable.([12]) Es a partir de este momento en que co-
mienza el proceso adjudicativo ante la Comisión.([13])

▪ Como vemos, el procedimiento para ventilar car-
gos por prácticas ilícitas *consta de dos fases*. En la primera
de ellas se realiza una investigación "preliminar" con el fin
de determinar si existe causa probable para creer que el
imputado ha incurrido en una práctica ilícita. La propia
ley, en su Sec. 9.3(a), ante, establece que si la Comisión
determina que no hay base suficiente para sostener los car-
gos imputados, *deberá emitir una orden cerrando y archi-
vando el caso*. Adviértase que la única alternativa que se le
brinda al querellante, en esta etapa de los procedimientos,
surge de lo dispuesto en la citada Sec. 408 del Reglamento
Núm. 6385 de la Comisión, donde se reconoce el derecho
del querellante a solicitar una *reconsideración* ante la
Comisión. *Es de notar que el propio Reglamento, en su Sec.*

---

([12]) En estos casos no se emitirá querella hasta que haya pasado el período de
reconsideración que corresponde a las desestimaciones parciales o hasta que la Co-
misión haya decidido dicha reconsideración, de haber sido sometida. Sec. 409(B) del
Reglamento Núm. 6385 de la Comisión de Relaciones del Trabajo del Servicio Público
de 28 de diciembre de 2001, pág. 27.

([13]) La Secretaría notificará esta querella, además del aviso de audiencia, a las
partes. La vista ante el oficial examinador deberá celebrarse en los próximos treinta
días. La parte contra quien se expidió la querella tendrá diez días a partir de su
notificación, para contestar las alegaciones contenidas en conformidad con el Art. 9,
Sec. 9.3(e) de la Ley Núm. 45, ante, 3 L.P.R.A. sec. 1452c(e).

*408(d), dispone que en esta etapa de los procedimientos no existirá revisión judicial alguna.*

Por su parte, la *segunda fase* del procedimiento surge tan pronto como se emite la querella correspondiente. Es en este momento en que se activan los derechos que dispone la ley en cuanto al *proceso adjudicativo* que habrá de celebrarse ante el organismo administrativo. *Entre los derechos que le asisten a las partes, en esta etapa de los procedimientos, está la revisión judicial de la "orden final" que emite la Comisión.* A tales efectos, la Sec. 9.3(j) de la Ley Núm. 45, ante, 3 L.P.R.A. sec. 1452c(j), dispone, en lo pertinente, que

> [c]*ualquier parte* adversamente afectada por una *orden final* de la Comisión podrá solicitar revisión de la misma ante el Tribunal de Circuito de Apelaciones, radicando ante dicho Tribunal una petición escrita solicitando que la orden de la Comisión sea modificada o revocada .... (Énfasis suplido.)

Somos los primeros en admitir que podría surgir una interrogante en cuanto a si esta revisión que permite la ley, en esta etapa de los procedimientos, debe aplicar de igual forma en aquellos casos en que se trate de una determinación de no emitir querella por práctica ilícita. Esto es, si luego de que la Comisión emite la orden, denegando la expedición de la querella —en la etapa preliminar del procedimiento— y luego de que la orden se convierta en una "orden final", por haber sido denegada su reconsideración, existe la posibilidad de revisar dicha orden ante el Tribunal de Circuito de Apelaciones.

Esta interrogante fue contestada *en la negativa* por este Tribunal en *Luce & Co. v. Junta de Relaciones del Trabajo*, 82 D.P.R. 96 (1961), donde interpretamos una *disposición idéntica* a la que hoy ocupa nuestra atención, *que contiene la Ley Núm. 130*, ante.[14] En aquella ocasión teníamos

---

[14] Ésta dispone, en lo pertinente, que: "Cualquier persona perjudicada por una orden final de la Junta concediendo o negando, en todo o en parte, el remedio que se interesa, podrá obtener la revisión de dicha orden en el Tribunal Supremo de Puerto Rico, radicando en dicho tribunal una petición escrita suplicando que la orden de la Junta sea modificada o revocada." 29 L.P.R.A. sec. 70.

ante nuestra consideración una controversia muy similar a la que hoy nos ocupa, pues se nos solicitó la revisión de una resolución dictada por la Junta de Relaciones del Trabajo, mediante la cual se confirmó la determinación de su Presidente de no dar inicio a una querella por prácticas ilícitas. A pesar de que se trata de dos estatutos diferentes, por considerar que la ley que creó la Junta de Relaciones del Trabajo, Ley Núm. 130, ante, y su Reglamento[15] contienen disposiciones muy similares a las que hoy nos ocupan, y que las funciones y los deberes de la Junta comparan sustancialmente con las de la Comisión, somos del criterio que lo allí resuelto resulta de particular pertinencia a nuestro caso.

En *Luce & Co. v. Junta de Relaciones del Trabajo*, ante, refiriéndonos específicamente al asunto de si la decisión de la Junta de Relaciones del Trabajo, al resolver si inicia o no una querella por alegadas prácticas ilícitas, puede ser considerada como una "orden final" a los efectos de su revisión ante el Tribunal de Circuito de Apelaciones, *señalamos que esta determinación depende en su totalidad de la discreción de la agencia y que, por tal razón, se ubica fuera del ámbito de la revisión judicial.*[16] En tal virtud, concluimos en dicho caso que esta determinación no es revisable como una "orden final" de la Junta y que lo dispuesto en el Art. 9 de la Ley de Relaciones del Trabajo, 29 L.P.R.A. sec. 70 —*idéntico a lo que dispone la Sec. 9.3(j) de la Ley de Relaciones del Trabajo para el Servicio Público, ante, hoy bajo análisis*— no aplica a aquellos casos en que

---

[15] Reglamento Núm. 2 de la Junta de Relaciones del Trabajo de 2 de abril de 1946.

[16] Adviértase que estamos ante una excepción a la norma general de que la revisión judicial de las determinaciones administrativas se presume siempre que no haya sido prohibida por la Asamblea Legislativa en forma expresa y clara. D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, Colombia, Ed. Forum, 1993, págs. 414–415. Véanse, además: *Bonilla v. Chardón*, 118 D.P.R. 599 (1987); *Santos Rodríguez v. Fuentes Fluviales*, 91 D.P.R. 56, 65 (1964); *Medina v. Pons*, 81 D.P.R. 1 (1959); *López v. Muñoz, Gobernador*, 80 D.P.R. 4 (1957); *Rivera v. Benítez, Rector*, 73 D.P.R. 377 (1952).

lo que se intenta revisar es la denegatoria de la Comisión en cuanto a expedir querella por prácticas ilícitas.([17])

Ciertamente, la razón principal que llevó a este Tribunal a decidir, como lo hicimos en *Luce & Co. v. Junta de Relaciones del Trabajo*, ante, descansa en gran medida en el hecho de que entendimos que, al considerar cargos por prácticas ilícitas, la Junta ejercita su *discreción administrativa*. Ello, *como norma general*, impide la revisión judicial, pues, según expresamos, el curso de acción que sigue el organismo administrativo "responde a su política administrativa especializada".([18]) A tales efectos señalamos:

> Resulta claro que, al considerar cargos de prácticas ilícitas, la Junta puede ejercitar su discreción administrativa al resolver si inicia o no la querella correspondiente. Como se dijo en *Jacobsen et al. v. N.L.R.B.*, 120 F.2d 96 (C.A. 31941), *"el curso de acción a seguirse descansa en la sana discreción de la Junta y responde a su política administrativa especializada.* No se trata de discreción legal, al menos de aquella que daría margen a los tribunales de circuito de apelaciones para ordenar a la Junta a expedir una querella". *Parece obvio que si la decisión de la Junta de negarse a expedir una querella a base de la presentación de cargos por prácticas ilícitas estuviera sujeta a revisión judicial, no sólo se inundarían los tribunales con recursos de esta clase, sino que en efecto se estaría sustituyendo la práctica administrativa uniforme establecida, desarrollada*

---

([17]) Esta norma fue reiterada por este Tribunal años más tarde en *Martínez Rodríguez v. A.E.E.*, 133 D.P.R. 986 (1993).

([18]) La jurisprudencia federal ha reconocido, como norma general, que existe una presunción de no revisibilidad con relación a las determinaciones administrativas que han sido encomendadas a la discreción de la agencia. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 106, (1986); *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967); *Citizens to Preserve Overton Park v. Volpe*, 402 U.S. 401 (1971). Véanse, además: 5 U.S.C. sec. 701(a)(2); R.J. Pierce, *Administrative Law Treatise*, 4ta ed., Nueva York, Ed. Aspen Law & Bussiness, 2001, Vol. III, págs. 1258–1269.

En cuanto a las razones que sustentan esta presunción, se ha señalado lo siguiente:

"First, without benefit of a statutory delineation of the limits of discretion it would be very difficult for courts to decide in particular cases whether there had been an abuse of discretion .... A second reason for judicial reluctance to review discretionary decisions is that exercises of broad discretion will only infrequently violate the standard of abuse of discretion, and it would be wasteful to entertain numerous suits, many surely frivolous, in order to correct the occasional abuse." H. Saferstein, *Nonreviewability: A Functional Analisis of "Committed to Agengy Discretion"*, 82 Har. L. Rev. 367, 380–381 (1968).

*y orientada de un organismo especializado por el criterio judicial.* Y esto nos llevaría con toda probabilidad a la incertidumbre en el campo del derecho obrero-patronal debido a las diferencias entre las distintas filosofías socio-económicas de los jueces. (Citas omitidas y énfasis suplido.)[19] *Luce & Co. v. Junta de Relaciones del Trabajo,* ante, págs. 101–102.

Entre los casos citados en apoyo de la determinación a la que llegáramos en *Luce & Co. v. Junta de Relaciones del Trabajo,* ante, debemos resaltar uno resuelto por el Tribunal de Apelaciones del Primer Circuito, *Lincourt v. N.L.R.B.,* 170 F.2d 307 (1er Cir. 1948), donde se resolvió que en los procedimientos de prácticas ilícitas la presentación de la querella era una materia de discreción administrativa y que la negativa de la agencia a iniciarla no era revisable por las cortes de circuito. Esta norma fue ratificada años más tarde en *Saez v. Goslee,* 463 F.2d 214 (1er Cir. 1972), *cert.* denegado, 409 U.S. 1024 (1972), donde ese mismo tribunal sostuvo: "this situation seems paradigmatic of one which is 'committed to agency discretion' …".

Son innumerables las decisiones emitidas por los diferentes tribunales de la jurisdicción norteamericana en torno a este tema. *N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132 (1975); *Vaca v. Sipes,* 386 U.S. 171 (1967); *Lincourt v. N.L.R.B.,* ante; *Saez v. Goslee,* ante; *United Elec. Contractors Ass'n v. Ordman,* 366 F.2d 776 (2do Cir. 1966), *cert.* denegado, 385 U.S. 1026 (1967); *National Maritime Union of America, AFL-CIO v. N.L.R.B.,* 423 F.2d 625 (2do Cir. 1970); *Jacobsen v. Nation Labor Relations Board,* 120 F.2d 96 (3er Cir. 1941); *Contractors Ass'n of Philadelphia and Eastern Pa. v. N.L.R.B.,* 295 F.2d 526 (3er Cir. 1961), *cert.* denegado, 369 U.S. 813 (1962); *Quick*

---

[19] A esta conclusión llegamos tras adoptar las expresiones de varios tribunales de la jurisdicción norteamericana en relación con lo dispuesto en la Ley Nacional de Relaciones del Trabajo de 1935, conocida como Ley Wagner (Ley de 5 de julio de 1935, Cap. 372, 49 Stat. 449), y la Ley de Relaciones Obrero-Patronales de 1947, conocida como Ley Taft-Hartley (61 Stat. 136 (1947)), 29 U.S.C.A. sec. 160 (ed. 1952), legislaciones que contienen disposiciones similares a las contenidas en la Ley Núm. 130, ante.

*v. N.L.R.B.*, 245 F.3d 231 (3er Cir. 2001); *George Banta Co., Inc. v. N.L.R.B.*, 626 F.2d 354 (4to Cir. 1980), *cert.* denegado, 449 U.S. 1080 (1981); *National Labor Relations Bd. v. Bar-Brook Mfg. Co.*, 220 F.2d 832 (5to Cir. 1955); *Bova v. Pipefitters & Plumbers Local 60, AFL-CIO*, 554 F.2d 226 (5to Cir. 1977); *Rockford Redi-Mix Co., Inc. v. Zipp*, 632 F.2d 30 (7mo Cir. 1980), *cert.* denegado, 450 U.S. 929 (1981); *Braden v. Herman*, 468 F.2d 592 (8vo Cir. 1972), *cert.* denegado, 411 U.S. 916 (1973); *N.L.R.B. v. International Bro. of Elec. Wkrs., Loc. U.*, 445 F.2d 1015 (9no Cir. 1971); *Pacific Southwest Airlines v. N.L.R.B.*, 611 F.2d 1309 (9no Cir. 1980); *Baker v. Intern. Alliance of Theatrical Stage Emp.*, 691 F.2d 1291 (9no Cir. 1982).

◼ La norma reiterada en los casos citados en el párrafo anterior es a los efectos de que la decisión de emitir o no una querella con relación a prácticas ilícitas descansa en la sana discreción de la agencia. Basándose en ello los tribunales, una y otra vez, han resuelto que la decisión de emitir o no una querella por alegadas prácticas ilícitas *no* está sujeta a ser revisada judicialmente.

Ahora bien, y como era de esperarse, *esta norma tiene sus excepciones.* Ello ocurre siempre que el organismo administrativo actúe de forma arbitraria o en abuso de su facultad discrecional, afectando así derechos constitucionales o estatutarios de las partes.[20] *Rivera v. Dir. Adm. Trib.*, 144 D.P.R. 808, 821 (1998). Véase, además, *Leedom v. Kyne*, 358 U.S. 184 (1958). De ser así, el acceso a los

---

[20] En el pasado hemos señalado que "cualquier delegación de poder legislativo concediendo discreción absoluta, resultaría inconstitucional, pues ello equivaldría a una delegación *in toto* del poder legislativo, actuación contraria a los cánones constitucionales de una democracia". *Pueblo v. Sánchez González*, 90 D.P.R. 197, 200 (1964). Ciertamente, "el concepto legal de la discreción no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho, sino la obligación de aplicar las reglas del conocimiento distintivo a ciertos hechos jurídicos con el objeto de mitigar los efectos adversos de la Ley, a veces diferenciando unos efectos de otros". *Íd.*

Cónsono con lo anterior, en *Rodríguez v. Srio. de Obras Públicas*, 86 D.P.R. 258, 265 (1962), señalamos que "[l]a discreción administrativa no es absoluta" y que "[n]ingún tribunal estaría dispuesto a convertir la discreción administrativa en un término mágico que permita una arbitrariedad".

tribunales sí estaría disponible. *Rivera v. Dir. Adm. Trib.*, ante.

█ A tono con lo anterior, varios tribunales de la jurisdicción norteamericana han resuelto —a modo de excepción— que procede la revisión judicial de determinaciones emitidas por la Junta Nacional de Relaciones del Trabajo, en las que ésta se haya negado a emitir querella por prácticas ilícitas, siempre que la Junta haya actuado en exceso del poder delegado. *Bova v. Pipefitters & Plumbers Local 60, AFL-CIO*, ante; *Terminal Freight Handling Co. v. Solien*, 444 F.2d 699 (8vo Cir. 1971); Véase, además, *Leedom v. Kyne*, ante. Se ha entendido que dicho organismo administrativo ha actuado en exceso del poder delegado en aquellos casos en que ignora una prohibición expresa contenida en la ley. Íd.

Otra instancia en que los tribunales han optado por ignorar la norma general a los efectos de que la determinación de la agencia en cuanto a no expedir una querella por prácticas ilícitas no es revisable judicialmente, es en aquellos casos en que la actuación administrativa descansa en errores de derecho o interpretaciones erróneas de la ley. *Associated Builders Etc. v. Irving*, 610 F.2d 1221 (4to Cir. 1979); *N.L.R.B. v. International Bro. of Elec. Wkrs., Loc. U.*, ante; *Southern California Dist. Coun. of Lab. 1184 v. Ordman*, 318 F. Supp. 633 (D.C. Cal. 1970).

De lo anterior se colige que ante determinaciones como las que hoy nos ocupa —emitir o no una querella por práctica ilícita de trabajo— *la revisión judicial sólo procede en circunstancias de excepción*, pues como se expresara en *Hennepin Broadcasting Associates, Inc. v. N.L.R.B.*, 408 F.Supp. 932 (D.C. Minn. 1975), sólo en casos extremos podría obligarse a la Comisión a emitir, o al menos a reconsiderar, su negativa a expedir una querella por prácticas ilícitas. Véanse, además: *Southern California Dist. Coun. of Lab. 1184 v. Ordman*, ante; G.A. Guarino, *Refusal of National Labor Relations Board to File Unfair Labor Prac-*

*tice Complaint as Subject to Review in Independent Suit in Federal District Court*, 69 A.L.R. Fed. 870 (1984).

## III

En virtud de lo expuesto en el acápite que antecede, y considerando que las disposiciones de la Ley de Relaciones del Trabajo para el Servicio Público, Ley Núm. 45, ante, que hoy nos ocupan son idénticas a las contenidas en la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130, ante —y su citado Reglamento— y que los organismos administrativos creados por ambas leyes ejercen y regulan funciones similares, ciertamente no vemos razón alguna por la cual no podamos establecer en el presente caso la misma normativa que rige bajo la Ley de Relaciones del Trabajo en torno a la revisión judicial de la determinación de la agencia al resolver si emite o no querella por práctica ilícita.[21]

Esto es, hoy resolvemos que la determinación que hace la Comisión, al resolver si inicia o no una querella por prácticas ilícitas, no constituye una "orden final" a los efectos de revisarla ante el foro apelativo intermedio. *Dicha determinación depende en su totalidad de la discreción de la Comisión y, por consiguiente, no está sujeta a ser revisada judicialmente.* Ello, claro está, sujeto a que no estén presentes ninguna de las circunstancias de excepción reconocidas jurisprudencialmente. Éstas son que: (i) la determinación de la Comisión afecte derechos constitucionales de las partes por haber actuado de forma arbitraria o en abuso de su facultad administrativa; (ii) la Comisión ignore una prohibición expresa contenida en su ley orgánica, y (iii) la actuación administrativa descanse en una interpretación errónea de la ley.

---

[21] Hemos de recordar que dicha norma ha sido avalada no sólo por la jurisprudencia de este Tribunal, sino también por la jurisprudencia de los tribunales federales.

## IV

Dentro del marco doctrinal previamente esbozado es que debemos evaluar si procede la revisión judicial de una determinación emitida por la Comisión, en la que se haya negado a emitir una querella por alegadas prácticas ilícitas. *Por entender que estamos ante una determinación administrativa que ha sido encomendada a la discreción de la agencia y que no están presentes ninguna de las excepciones que nos permiten asumir jurisdicción en este tipo de asunto, contestamos dicha interrogante en la negativa* y, por consiguiente, *confirmamos* el dictamen emitido por el Tribunal de Circuito de Apelaciones en cuanto a este particular. Veamos.

En el caso de autos la peticionaria presentó un cargo de práctica ilícita contra la Federación, alegando que ésta había violado la Sec. 9.2(a) de la Ley Núm. 45, ante, al coartarle su derecho a no estar afiliada ni ser representada por la referida organización obrera. La Comisión, *luego de realizar la correspondiente investigación*, determinó que la evidencia presentada no era suficiente para sustentar un cargo por violación a lo dispuesto en la referida Sec. 9.2(a) de la Ley Núm. 45, ante. A su entender, la prueba presentada evidenciaba que la Federación, en representación de la maestra unionada, había solicitado la suspensión de la reunión en controversia al amparo del derecho que le reconoce la Sec. 16.7 de la Ley Núm. 45, ante, a estar presente siempre que se celebren reuniones de este tipo.

En su escrito ante nos la peticionaria sostiene que en el momento en que la Comisión archivó y desestimó su solicitud de cargos, teniendo por resuelta una controversia de derecho que quedó sin resolver, dio paso a que pueda ser revisada judicialmente. Aun cuando reconoce que la Comisión tiene amplia discreción para investigar cargos de práctica ilícita y determinar si va a emitir querella a tenor con lo resuelto en los casos *Luce & Co. v. Junta de Relaciones del Trabajo*, ante, y *Martínez Rodríguez v. A.E.E.*, 133 D.P.R. 986 (1993), la peticionaria arguye que dicha discreción debe

ceder ante situaciones como la de autos en que, alegada-
mente, las determinaciones resultan ser irrazonables, injus-
tas e incompatibles.

De este modo, y amparándose en que la Comisión actuó
de manera irrazonable e ilegal al emitir su determinación,
la peticionaria solicita de esta Curia que revoque la deci-
sión emitida por el foro apelativo intermedio, declarándose
sin jurisdicción para revisar la determinación de la Comi-
sión en cuanto a no emitir querella en contra de la Fede-
ración de Maestros por la alegada violación a la Sec. 9.2(a)
de la Ley Núm. 45, ante.(22) *No podemos refrendar dicha
posición.*

Ya hemos señalado que la determinación preliminar que
hace la Comisión, a los efectos de emitir o no una querella
por prácticas ilícitas, ha sido encomendada a su discreción.
Dicha determinación cae fuera del ámbito de la revisión
judicial, a menos que pueda demostrarse que la Comisión
ha actuado de forma arbitraria o en abuso de su discreción,
y que ha afectado derechos constitucionales o estatutarios
de las partes.

En el presente caso la señora Molina Torres no ha ale-
gado, *ni los hechos lo demuestran*, que al negarse a emitir
una querella por prácticas ilícitas la Comisión haya ac-
tuado de manera *ultra vires* o en exceso del poder
delegado. Tampoco surge que estemos ante un caso de
interpretación errónea de la citada Ley Núm. 45 o ante
una determinación que haya sido sustentada en un error
de derecho. Tal y como ocurrió en *Martínez Rodríguez v.
A.E.E.*, ante, en el presente caso la negativa de la Comi-
sión a expedir una querella respondió a que *no* encontró

---

(22) Nos resulta sorprendente por demás el hecho de que la peticionaria, en
lugar de solicitar que ordenemos a la Comisión que expida la correspondiente que-
rella, nos solicita que: (i) que declaremos inconstitucional el requisito impuesto por
ley de notificar la intención de no ser afiliado, so pena de ser ingresado automática-
mente a las filas del representante exclusivo certificado; (ii) declaremos ilegal y *ultra
vires* el término de quince días anunciado por la Comisión en su Resolución de 13 de
enero de 1999, y (iii) declaremos que todo descuento salarial de empleado guberna-
mental debe ser autorizado por escrito, debiendo devolver el Departamento de Edu-
cación todo descuento hecho sin tal autorización.

que la Federación hubiese incurrido en la práctica ilícita imputada. Dicha determinación ciertamente descansa en la experiencia y pericia de la agencia, quien posee el conocimiento especializado para entender en este tipo de asunto.[23] De forma alguna podemos concluir que en el presente caso la Comisión ha abusado de su poder en el proceso decisional. Todo lo contrario, los hechos demuestran que la actuación de la agencia fue razonable, tomada en virtud de la evidencia que le fuera presentada.

Tampoco podemos avalar la contención de la peticionaria a los efectos de que la Comisión se negó a considerar la controversia medular del caso, resolviendo al amparo de un asunto secundario. Una mera lectura del informe emitido por el agente investigador en el presente caso evidencia que la Comisión sí consideró el asunto de la violación a la Sec. 9.2(a), ante, realizando la investigación y el análisis correspondientes. Fue luego de este proceso de análisis que el investigador concluyó que el cargo debía ser desestimado, pues a base de su pericia y conocimiento especializado, entendió que la Federación no había incurrido en la violación de la referida sección. El hecho de que en su resolución la Comisión haya señalado que el cargo presentado por la peticionaria no guardaba relación alguna con lo dispuesto en la citada Sec. 9.2(a), sino con la Sec. 16.7 de la Ley Núm. 45, ante, no significa que no haya investigado o atendido el cargo presentado. Es evidente que dicha determinación fue tomada luego de analizar a cabalidad los hechos del presente caso y entender que no existía evidencia suficiente para sustentar la alegación de Molina Torres en cuanto a la violación de la referida sección.

La peticionaria no nos ha puesto en condiciones de revisar esta determinación, por lo que estamos impedidos de entenderla.

---

[23] Véase D. Fernández Quiñones, *La revisión judicial de las decisiones administrativas*, 69 Rev. Jur. U.P.R. 1129 (2000).

## V

En mérito de lo antes expuesto, *procede decretar la confirmación de la sentencia emitida por el Tribunal de Circuito de Apelaciones en el presente caso.*

*Se dictará sentencia de conformidad.*

Los Jueces Asociados Señora Naveira de Rodón y Señor Fuster Berlingeri disintieron sin opinión escrita.