El Juez Asociado Señor Rebollo López
emitió la opinión del Tribunal.
El 25 de febrero de 2003, el Sindicato Puertorriqueño de Maestros (Sindicato) presentó, al amparo de la Ley de Relaciones del Trabajo para el Servicio Público de Puerto Rico, Ley Núm. 45 de 25 de febrero de 1998 (3 L.P.R.A. see. 1451 et seq.), una petición de representación ante la Comisión de Relaciones del Trabajo del Servicio Público (Comisión). En la referida petición alegó que un número sustancial de empleados que componían la unidad apropiada de maestros o personal docente del Departamento de Educación deseaban estar representados por el Sindicato. Además, solicitó que se iniciara el procedimiento correspondiente con el fin de ser certificado como representante exclusivo de dicha unidad apropiada.
La Federación de Maestros de Puerto Rico (Federación), representante certificada de la unidad peticionada, solicitó la desestimación de la petición presentada por el Sindicato. En un escrito posterior indicó que debido a que la celebración de la elección estaba sujeta a la verificación de interés sustancial, la Comisión debía verificar las firmas existentes en los endosos de las tarjetas de representación, presentadas por el Sindicato, ya que algunos de sus miembros tenían motivos fundados para sospechar que se les había incluido como endosantes del Sindicato cuando nunca habían firmado tales endosos.
Conforme a su reglamento, la Comisión procedió a verificar si existía el alegado interés sustancial, según las tarjetas sometidas por el Sindicato. El número de empleados en la lista sometida por el Departamento de Educación en la unidad apropiada de maestros o personal docente era de 39,506, siendo 11,852 la cantidad correspondiente al treinta por ciento requerido por las disposiciones de la Ley Núm. 45, ante. Determinó la Comisión que el Sindicato sólo había obtenido 10,380 tarjetas de representación, faltando un total de 1,472 para cumplir con el treinta por *534 ciento del interés sustancial. Por consiguiente, la Comisión desestimó la petición de representación presentada por el Sindicato.
El Sindicato solicitó la reconsideración de la desestimación de su petición. Alegó que había revisado y recontado todas las tarjetas de representación que sometió a la consideración de la Comisión y que había contado 13,001 tarjetas de empleados de la unidad apropiada en cuestión, y que 12,825 de ellas eran válidas.(1) Por consiguiente, solicitó que se celebrara una vista en la que éste tuviera la oportunidad de constatar una a una las tarjetas de representación en poder de la Comisión.
En virtud de la referida solicitud de reconsideración, la Comisión ordenó a su División de Investigaciones a reexaminar y realizar un recuento de la muestra de interés sometida por el Sindicato y a rendir un informe sobre sus hallazgos, conclusiones y recomendaciones. En el informe que sometiera a la Comisión, la División de Investigaciones determinó que el número de tarjetas válidas sometidas por el Sindicato para la determinación del interés sustancial ascendía a 11,519, cantidad que no componía el treinta por ciento requerido.(2)
Conforme al informe rendido por la División de Investigaciones, la Comisión emitió una Resolución el 5 de enero de 2005 en la que confirmó su determinación anterior, esto es, desestimó la petición de representación presentada por el Sindicato por falta de interés sustancial y decretó el archivo del caso.
El Sindicato presentó un escrito titulado Urgente Reconsideración, en el que le solicitó a la Comisión que se le otorgara veinte días laborables “para comparecer y presentar prueba frente a la Resolución del 5 de enero de 2005 *535 que cumple con el 30% requerido para su Petición de Elección; se ordene y a esos efectos se entregue copia de la Lista de Elegibles en poder de la Honorable Comisión y/o Departamento de Educación; se dé acceso al expediente administrativo en la Honorable Comisión, bajo las medidas que se entiendan apropiadas”. Apéndice de la Petición de certiorari, pág. 188. Mediante carta a esos efectos, la Comisión informó al representante legal del Sindicato que, por haberse ordenado el cierre y archivo del caso mediante la Resolución emitida el 5 de enero de 2005, no consideraría la referida solicitud de reconsideración.
Inconforme con la desestimación de su petición de representación, el Sindicato acudió al Tribunal de Apelaciones mediante un recurso de revisión administrativa. Alegó que la petición cumplía con el treinta por ciento de interés sustancial requerido, razón por la cual la Resolución de la Comisión debía ser revocada; además, solicitó del tribunal apelativo que ordenase la elección según solicitada por el Sindicato.
Tanto la Comisión como la Federación solicitaron la desestimación del recurso presentado por alegada falta de jurisdicción. Argumentaron que la resolución en la cual se desestimó la petición del proceso de representación emitida por la Comisión no era revisable.
Trabada la controversia a los fines de determinar si el Tribunal de Apelaciones tenía jurisdicción para revisar una resolución de la Comisión dictada como parte del procedimiento de representación, dicho foro resolvió que de acuerdo con la jurisprudencia de este Tribunal, una resolución de la Junta de Relaciones del Trabajo (Junta) dentro de un procedimiento de representación no era revisable, salvo por la vía colateral como parte de una determinación de la Junta sobre práctica ilícita de trabajo. Esta normativa se había hecho extensiva a casos similares ante la Comisión en el caso Federación v. Molina, 160 D.P.R. 571 (2003).
*536 E1 referido foro expresó, además, que en el caso ante su consideración no se encontraba presente ninguna de las excepciones plasmadas por este Tribunal en Federación v. Molina, ante, y que permitían la revisión de una decisión de la Comisión sobre si procedía o no iniciar cargos por prácticas ilícitas. En virtud de ello, el foro apelativo intermedio se declaró sin jurisdicción para revisar la resolución recurrida.
Insatisfecho con el anterior dictamen, el Sindicato acudió ante este Tribunal mediante un recurso de certiorari, imputándole al foro apelativo intermedio haber errado
... al declararse sin jurisdicción por alegadamente no encontrarse presente ninguna de las excepciones de Federación de Maestros v. Molina Torres, 2003 TSPR 159, a pesar de que el laudo de la Comisión de Relaciones del Trabajo del servicio público viola derechos constitucionales y estatutarios de miles de trabajadores, está fundamentado en una interpretación errónea de la ley y va en contra de los propósitos de la Ley 45, supra.
Examinada la Petición de certiorari, concedimos a la parte recurrida el término de veinte días para mostrar causa por la cual este Tribunal no debía expedir el auto solicitado y dictar Sentencia revocatoria de la emitida en el presente caso por el Tribunal de Apelaciones, en vista de los resuelto por este Tribunal en A.R.Pe. v. Coordinadora, 165 D.P.R. 850 (2005).
La parte recurrida ha comparecido en cumplimiento de núestra orden. Estando en condiciones de resolver el recurso presentado, procedemos a así hacerlo. Confirmamos; veamos por qué.
HH
La Ley Núm. 45, ante, fue aprobada con el propósito de conferirle a los empleados públicos que no estén cubiertos por la Ley Núm. 130 de 8 de mayo de 1945, co *537 nocida como la Ley de Relaciones del Trabajo de Puerto Rico, 29 L.P.R.A. sec. 61 et seq., el derecho a la organización sindical y a la negociación colectiva, siempre que se observen los parámetros establecidos en la mencionada ley.
A esos fines, la Ley Núm. 45, ante, les reconoció a los empleados de las agencias del gobierno central el derecho a organizarse y afiliarse en organizaciones sindicales de su elección. 3 L.P.R.A. sec. 1451b.(3) De esta manera, los empleados de las diferentes unidades apropiadas que deseen sindicalizarse podrán escoger, mediante el voto mayoritario, la organización que habrá de representarles ante la agencia correspondiente. 3 L.P.R.A. see. 145 lg. La organización sindical que prevalezca en las elecciones, y que sea certificada como representante exclusivo de los empleados comprendidos en esa unidad apropiada, tendrá la autoridad para negociar con la agencia correspondiente un convenio colectivo "en el que se discutan y acuerden disposiciones sobre salarios, beneficios marginales, términos y condiciones de empleo ...”. 3 L.P.R.A. see. 145lj.
Mediante la aprobación de esta pieza legislativa se creó la Comisión de Relaciones del Trabajo del Servicio Público, entidad encargada de interpretar, aplicar y hacer cumplir las disposiciones de la ley en relación con los procesos de organización, certificación, descertificación de organizaciones sindicales, procedimientos relacionados con la conciliación y el arbitraje de negociaciones de convenios colectivos, procedimientos relacionados con prácticas ilícitas, y en todos aquellos aspectos que la ley le haya delegado alguna actuación en particular.
En lo que respecta a la controversia ante nuestra consideración, debemos señalar que esta pieza legislativa *538 estableció el procedimiento a seguir en los procesos de organización y certificación de organizaciones sindicales para la negociación colectiva. La See. 4.5 de la Ley Núm. 45, ante, 3 L.P.R.A. sec. 1451g, dispone que
[l]as organizaciones sindicales interesadas en ser certificadas como representantes exclusivos de una unidad apropiada para fines de negociación colectiva someterán ante la Comisión prueba demostrativa de que un treinta por ciento (30) del total de empleados en dicha unidad apropiada ha endosado una petición para que se lleve a cabo una votación para determinar si desean estar representados por una organización sindical. (Enfasis suplido.)
La See. 4.6 de la Ley Núm. 45, ante, además, le confirió a la Comisión la facultad de aprobar un reglamento en el que se establezcan los procedimientos que observarán las organizaciones obreras y los patronos en la elección del representante sindical. 3 L.P.R.A. see. 145 lh. En la preparación de dicho reglamento, la Comisión deberá considerar los procedimientos establecidos en la Ley de Relaciones del Trabajo de Puerto Rico. íd.
A esos fines, la Comisión adoptó el Reglamento Núm. 6385 de 26 de enero de 2002. Éste regula, entre otros, el procedimiento de representación, el cual se inicia con la presentación de una petición de parte de una organización sindical que solicita una elección para escoger un representante exclusivo. Art. Ill, Sec. 300 del Reglamento Núm. 6385, ante. Dicha petición tiene que cumplir con to-dos los requisitos reglamentarios. Art. Ill, Sec. 302 del Reglamento Núm. 6385, ante.
Una petición de representación se podrá presentar para los propsitos siguientes: solicitar una elección para escoger un representante exclusivo; clarificar una unidad apropiada; enmendar una certificación de representante exclusivo, y descertificar un representante exclusivo bajo los incisos (a) y (b) de la See. 4.7 de la Ley Núm. 45, ante, 3 *539 L.P.R.A. sec. 1451i(a) y (b). Art. Ill, Sec. 300(A) del Regia mentó Núm. 6385, ante. Estos procedimientos mencionados se considerarán como investigativos y no dé adjudicación.
De particular relevancia al presente caso, el Reglamento Núm. 6385 dispone que toda petición presentada por alguna organización obrera, ál amparo del Art. Ill, Sec. 300(A)(1) del referido Reglamento, ante, o de un grupo de empleados al amparo del Art. Ill, Sec. 300(A)(4) del mismo reglamento, deberá estar acompañada de un interés sustancial de no menos de un treinta por ciento de los empleados en la unidad apropiada; los documentos originales que evidencien el interés sustancial, los cuales deberán contener el nombre de la agencia, el nombre y la firma de la persona y su clasificación o puesto, y una lista en orden alfabético —por apellidos primero y nombre después— de todas las personas que firmaron el interés sustancial con su clasificación o puesto. Art. Ill, Sec. 302(B)(1) y (B)(2) del Reglamento Núm. 6385, ante.
Luego de presentada la petición, y en casos en que las unidades apropiadas no hayan sido previamente establecidas, la Comisión notificará a las partes para que comparezcan ante un agente de ésta y puedan discutir y estipular las controversias sobre el alcance y la composición de las unidades apropiadas. Art. Ill, Sec. 305(B) del Reglamento Núm. 6385, ante. Si la controversia subsiste, la Comisión podrá ordenar la celebración de una Sesión Especial para la Determinación de Unidades Apropiadas. Id. En dicha Sesión las partes tendrán el derecho de presentar evidencia ante la Comisión sobre cómo debe quedar establecida la unidad apropiada.(4)
*540 Luego de que la Comisión determine las unidades apropiadas, o luego de haberse presentado una petición bajo el Art. Ill, Sec. 300(A)(1) o(A)(4) del Reglamento Núm. 6385, ante, en aquellos casos en que la Comisión ya hubiese previamente determinado las unidades apropiadas, ordenará una investigación de la muestra del interés sometida para verificar si la peticionaria o las interventoras, de haber alguna, cumplen con el requisito de interés sustancial en las unidades apropiadas determinadas por la Comisión. Art. Ill, Sec. 307(B) del Reglamento Núm. 6385, ante.
De la peticionaria cumplir con el requisito de interés sustancial de treinta por ciento, la Comisión ordenará una elección. Art. Ill, Sec. 307(C) del Reglamento Núm. 6385, ante.
Podemos colegir de lo anterior, en consecuencia, que el hecho de que la organización sindical que presente la petición cumpla con el requisito de interés sustancial es determinante para que la Comisión ordene una elección.
II
A. En cuanto al ámbito de revisión judicial de las decisiones emitidas por la Comisión,(5) la Sec. 10.1 de la Ley Núm. 45, ante, dispone que
' [e]l Tribunal de Circuito de Apelaciones, a solicitud de parte, tendrá jurisdicción para entender discrecionalmente en los re *541 cursos de revisión de órdenes y resoluciones finales de la Comisión según los términos que dispone las sees. 2101 et seq. de este título, conocidas como “Ley de Procedimiento Administrativo Uniforme”. Los recursos de revisión serán competencia de los Paneles de la Región Judicial de San Juan. (Enfasis suplido.) 3 L.P.R.A. sec. 1452d.
Recientemente, este Tribunal analizó la disposición antes citada en el caso A.R.PE. v. Coordinadora, ante, con el propósito de resolver si el Tribunal de Apelaciones podía revisar una determinación de unidad apropiada de la Comisión. Los hechos del mencionado caso, en apretada síntesis, fueron los siguientes: la Coordinadora Unitaria de Trabajadores del Estado (C.U.T.E.) presentó una petición de representación ante la Comisión con el propósito de convertirse en la representante exclusiva de los empleados de la Administración de Reglamentos y Permisos (A.R.Pe.). Luego de celebrada una vista, la Comisión determinó qué empleados constituían la unidad apropiada para participar en la elección en la que los empleados de A.R.Pe. determinarían si deseaban ser representados por la C.U.T.E. Posterior a dicha determinación, A.R.Pe. presentó una moción con sus excepciones a la determinación de unidad apropiada.(6)
En el entretanto, la Comisión celebró la elección y certificó a la C.U.T.E. como el representante exclusivo de los empleados. Luego, la Comisión resolvió finalmente la cuestión sobre unidad apropiada, al determinar que se mantuvieran en la unidad apropiada los puestos que A.R.Pe. solicitó que se excluyeran de ésta.(7)
A.R.Pe. apeló dicha determinación ante el Tribunal de Apelaciones y alegó que era revisable, ya que la *542 configuración de una unidad apropiada era determinante en el ejercicio de los derechos y obligaciones de los empleados y patronos en el marco de las relaciones laborales. El tribunal apelativo intermedio desestimó el recurso de revisión por entender que la determinación de unidad apropiada no era revisable, ya que era una decisión interlocutoria que no adjudicaba derechos u obligaciones. Además, aplicando por analogía la Ley de Relaciones del Trabajo de Puerto Rico, también señaló que las determinaciones de unidad apropiada sólo eran revisables por la vía colateral como parte de una determinación de práctica ilícita.(8)
Revocamos la determinación del tribunal apelativo. Al así hacerlo, expresamos que la Ley de Relaciones del Trabajo de Puerto Rico, ciertamente, limita la revisión judicial de las decisiones que emite la Junta a decisiones finales sobre prácticas ilícitas del trabajo.(9) Ello, no obstante, indicamos que, a diferencia de lo anterior, un análisis de la Sec. 10.1 de la Ley Núm. 45, ante, revela que ésta expresamente establece una revisión directa al foro apelativo intermedio de todas las decisiones de la Comisión que fuesen “órdenes y resoluciones finales”. En vista de que la Ley Núm. 45, ante, no contiene una limitación análoga a la de la Ley de Relaciones del Trabajo de Puerto Rico en cuanto al ámbito de revisión judicial, establecimos que no procedía aplicarla, por analogía, a un caso efectuado ante la Comisión.(10)
*543 En resumen, en A.R.Pe. v. Coordinadora, ante, resolvimos que para determinar silas decisiones emitidas en los procedimientos ante la Comisión eran "Ordenes o resoluciones finales" -y por ende, revisables ante el foro apelativo intermedio.- corresponde analizarlas a la luz de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A. U.) y sus disposiciones en cuanto a la revision de decisiones administrativas.
B. La Sec. 4.2 de la L.P.A.U., 3 L.P.R.A. sec. 2172, sobre la revision judicial de decisiones administrativas, dis-pone que
IIu]na parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar un recurso de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) dIas contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 2165 de este tItulo, cuando el término para instar el recurso de revision judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. La parte notificará la presentación del recurso de revision a la agencia y a todas las partes dentro del término para instar el recurso de revision. La notificación p0-drá hacerse por correo.
De la anterior disposición podemos colegir que una orden o resolución administrativa debe cumplir con dos requisitos para que sea revisable judicialmente, a saber: (1) que la resolución que se pretenda revisar sea final y no interlocutoria, y (2) que la parte adversamente afectada por la orden haya agotado los remedios provistos por la agencia. Véanse: Procuradora Paciente v. MCS, 163 D.P.R. 21 (2004); J. Exam. Tec. Méd. v. Elías et al., 144 D.P.R. 483 (1997).
EspecIficamente sobre lo que constituye una "or-den o resolución", la L.P.A.U. define dichos términos como *544 “cualquier decisión o acción agencial de aplicación particular que adjudique derechos u obligaciones de una o más personas específicas (Citas omitidas.) Sec. 1.3(f), 3 L.P.R.A. sec. 2102(f).
Por otro lado, una orden o resolución parcial, según la L.P.A.U., es “aquella acción agencial que adjudique algún derecho u obligación que no ponga fin a la controversia total sino a un aspecto específico de la misma”. See. 1.3(g), 3 L.P.R.A. sec. 2102(g). La referida disposición estatutaria también define una orden interlocutoria como aquella “acción de la agencia en un procedimiento adjudicativo que disponga de algún asunto meramente procesal”. (Énfasis suplido.) Sec. 1.3(h), 3 L.P.R.A. sec. 2102(h). Una orden o resolución interlocutoria de una agencia, incluso aquellas que se emitan en procesos que se desarrollen por etapas, no serán revisables directamente. La disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia. See. 4.2 de la L.P.A.U., ante.
Aunque la L.P.A.U. no define específicamente lo que constituye una “orden o resolución final”, sí establece sus requisitos. Según la Sec. 3.14 de la L.P.A.U., 3 L.P.R.A. see. 2164, éstos son: que ésta incluya unas determinaciones de hecho, las conclusiones de derecho de la decisión, una advertencia sobre el derecho a solicitar una reconsideración o revisión judicial —según sea el caso— y que esté firmada por el jefe de la agencia o por cualquier otro funcionario autorizado por ley.
Como es sabido, mediante la aprobación de la L.P. A.U., la Asamblea Legislativa limitó la revisión judicial exclusivamente a las órdenes finales de las agencias. Al así hacerlo, se aseguró que la intervención judicial se realizara después de que concluyeran los trámites administrativos y se adjudicaran todas las controversias pendientes ante la agencia. La intención legislativa consistió en evitar una *545 intromisión indebida, y a destiempo, en el trámite administrativo por parte de los tribunales. Comisionado Seguros v. Universal, 167 D.P.R. 21 (2006).
Una “orden o resolución final” de una agencia administrativa, según hemos interpretado en nuestra jurisprudencia, es aquella que dispone del caso ante la agencia y tiene efectos de adjudicación y dispositivos sobre las partes. Se trata de la resolución que culmina en forma final el procedimiento administrativo respecto a todas las controversias. Véase J. Exam. Tec. Méd. v. Elias et al., ante.
En Comisionado Seguros v. Universal, ante,(11) expresamos que dos condiciones tenían que ser satisfechas para que una decisión administrativa pudiese ser considerada final: primero, la actuación de la agencia debe representar la culminación de su proceso decisorio, y segundo, la actuación administrativa debe determinar todos los derechos y las obligaciones de las partes o surgir de ésta consecuencias legales. Id.
III
En conformidad con lo anteriormente expuesto, nos resta determinar si en el presente caso la resolución de la Comisión que desestima una petición de representación por no cumplirse con el interés sustancial, es una “orden o resolución final” según el derecho administrativo vigente y, por lo tanto, revisable ante el Tribunal de Apelaciones.
En el antes citado caso A.R.Pe. v. Coordinadora, resolvimos que la naturaleza de la resolución emitida por la Comisión(12) era una “orden o resolución final”, conforme a *546 la L.P.A.U., por las razones siguientes: (1) se emitió luego de celebrada una vista, donde ambas partes (A.R.Pe. y C.U.T.E.) presentaron evidencia y luego presentaron alegatos; (2) la Comisión emitió una determinación de unidad apropiada en donde se adjudicaron los derechos y las obligaciones de empleados a ser representados por una organización obrera; (3) se resolvieron finalmente las excepciones presentadas por A.R.Pe., por lo que finalizó la controversia en cuanto a este aspecto; (4) se incluyeron determinaciones de hecho y conclusiones de derecho; (5) fue firmada por el Presidente de la Comisión, y (6) la Comisión llevó a cabo el procedimiento eleccionario y certificó al representante de la negociación colectiva (C.U.T.E.), dándole fin a la controversia.
Resolvimos —en ese caso en particular— que la determinación era final ya que, culminados los procedimientos ante la agencia, ya no quedaba asunto pendiente alguno que resolver. Además, porque una determinación de unidad apropiada reconoce derechos sustantivos a los empleados públicos en tanto les reconoce el derecho a la negociación colectiva. Dicha determinación también le impone al patrono la obligación de negociar con los empleados públicos a través de su representante exclusivo. Al constituirse derechos y obligaciones de las partes, no hay duda de que la determinación de unidad apropiada en ese caso era propiamente una adjudicación final revisable.
Resulta pertinente señalar, en este momento —sobre lo que constituye una “adjudicación”— que la See. 1.3(b) de la L.P.A.U. la define como “el pronunciamiento mediante el cual una agencia determina los derechos, obligaciones o privilegios que corresponda a una parte”. 3 L.P.R.A. sec. 2102(b). Sobre ese particular, expresamos en A.R.Pe. v. Coordinadora, ante, que la configuración de la unidad apropiada y la determinación de si un puesto forma *547 parte de esta unidad constituía, ciertamente, una adjudicación para efectos de la L.P.A. U.
Por otro lado, se debe mantener presente que las determinaciones de una agencia en procesos adjudicativos son aquellas que definen los derechos y deberes legales de personas específicas. Por eso, este Tribunal ha definido el proceso de adjudicación como cuasi judicial. Véase J.P. v. Frente Unido I, 165 D.P.R. 445 (2005).
IV
En el presente caso, el Sindicato alega que la determinación de la Comisión de desestimar la petición de elección —sin otorgarle la oportunidad razonable de confirmar el interés sustancial— violó derechos fundamentales de libertad de asociación y expresión de los maestros, además de que constituyó una violación al debido proceso de ley. Sostiene, específicamente, que puede cumplir con el interés sustancial y que la Comisión pudo haber recibido prueba, frente a la corroboración del patrono, de los endosos que el Sindicato alega son válidos.
Por su parte, la Comisión alega que el propósito de demostrar adecuadamente la existencia de un interés sustancial, por parte de organizaciones obreras y de peticionarios individuales que inician o que interesen participar en un caso de representación, es determinar si llevar a cabo la elección sirve un propósito útil bajo la ley y si existe un interés suficiente por parte de los empleados para justificar la utilización del tiempo de la agencia, esfuerzos y recursos para llevar a cabo la elección. Según la Comisión, dicho proceso es investigativo y está dentro de los poderes discrecionales de la agencia administrativa.
A modo ilustrativo, y con relación a lo que constituye la muestra de interés sustancial (showing of interest), reseñamos brevemente lo expresado por la Federal Labor Reía *548 tions Authority en North Carolina Army National Guard et al, 34 FLRA 377, 383 (1990):
A Regional Directors determination of the adequacy of the showing of interest is administrative in nature and is not subject to collateral attack at a unit or representation hearing.(13) The requirement that a showing of interest be made serves an administrative purpose in helping to avoid unnecessary expenditure of time and funds where there is no reasonable assurance that a genuine representation question exists and prevents the parties from abusing the Authoritys processes. (Énfasis suplido.)
La anterior postura ha sido avalada por la Junta Nacional de Relaciones del Trabajo en el caso Gaylord Bag Co., 313 NLRB 306, 306-307 (1993). A esos efectos, allí se ex-presó:
The Board consistently has held that the showing of interest is a matter for administrative determination, and is not litigable by the parties. It is exclusively within the Boards discretion to determine whether a partys showing of interest is sufficient to warrant processing a petition. The purpose of a showing of interest is to determine whether the conduct of an election serves a useful purpose under the statute—that is, whether there is sufficient employee interest to warrant the expenditure of time, effort, and funds to conduct an election .... (Énfasis suplido y citas omitidas.)(14)
En este caso, la Comisión desestimó la petición de representación porque el Sindicato incumplió con un requisito reglamentario: la muestra del treinta por ciento de interés sustancial. Es menester enfatizar que dicha determinación fue tomada luego que la Comisión ordenara a su División de Investigaciones que investigara el asunto *549 del interés sustancial, la cual encontró que aún faltaban 333 tarjetas para que el Sindicato cumpliera con el requerido treinta por ciento.
No hay duda de que la determinación sobre si existe o no el referido interés sustancial es un procedimiento de naturaleza investigativa que lleva a cabo la Comisión en el cual, luego dé presentada una petición de representación, se determina si verdaderamente se justifica la celebración de una elección. A diferencia del procedimiento de determinación de unidad apropiada, en el que se adjudican finalmente los derechos y las obligaciones de las personas a ser representadas por una organización obrera, en el caso de una determinación de interés sustancial se trata de investigar si dicha organización obrera cumple o no con un requisito esencial inicial para proceder a celebrar una elección.
Ausente la demostración de interés sustancial, la Comisión no tiene que considerar a dicha organización laboral como posible representante exclusivo ni celebrar elección alguna. Además, durante dicho procedimiento no se celebran vistas ni se adjudica derecho sustantivo u obligación alguna,(15) por lo cual, la determinación sobre si una organización obrera cumple o no con el requisito de interés sustancial es un asunto puramente administrativo dentro del poder discrecional de la agencia, sin las características de un proceso de adjudicación luego de una vista administrativa.
Tal y como lo ha resuelto la jurisprudencia laboral federal, determinar si existe la muestra de interés sustancial es un asunto encomendado a la discreción de la agencia. En cuanto a estos asuntos en que una agencia *550 ejercita su discreción administrativa, nuestra jurisprudencia ha establecido, como norma general, que este hecho impide la revisión judicial. Véanse: Luce & Co. v. Junta de Relaciones del Trabajo de P.R., 82 D.P.R. 96 (1961); Federación v. Molina, ante.(16)
Además, la determinación en que se desestima la petición no es final. Una determinación de la Comisión sobre estos asuntos es sin perjuicio, ya que dentro del término de presentación que dispone la Sec. 303(C) del Reglamento de la Comisión —periodo de noventa a sesenta días previo al vencimiento de un convenio colectivo o cuando no exista un convenio— el peticionario puede volver a presentar una petición de representación siempre y cuando cumpla con los requisitos de la citada See. 302 del Reglamento Núm. 6385, ante. Por consiguiente, la desestimación de la petición presentada por el Sindicato no impide que éste pueda volver a iniciar un procedimiento para representar a la unidad apropiada en cuestión.
En conclusión, consideramos que la resolución en este caso no es final, de acuerdo con las disposiciones de la L.P.A.U. y el caso A.R.Pe. v. Coordinadora, ante. Estamos ante una determinación administrativa que, repetimos, ha sido encomendada a la discreción de la agencia y que responde a su política administrativa especializada. El foro apelativo intermedio, ciertamente, carecía de jurisdicción.
Por los fundamentos antes expuestos, procede expedir el presente recurso y dictar Sentencia confirmatoria de la emitida en el presente caso por el Tribunal de Apelaciones.

Se dictará Sentencia de conformidad.

*551 La Juez Asociada Señora Rodríguez Rodríguez concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Fuster Berlingeri disintió sin opinión escrita.

 Adujo que sólo había 176 repetidas.

 Un simple cálculo matemático indica que al Sindicato aún le faltaban 333 tapetas para componer el treinta por ciento el interés sustancial.

 Tan reciente como el 19 de octubre de 2005, en A.R.Pe. v. Coordinadora, 165 D.P.R. 850 (2005), discutimos ampliamente las disposiciones de la Ley Núm. 45 de 25 de febrero de 1998 (3 L.P.R.A. see. 1451 et seq.). Nos remitimos a la referida discusión. Véanse, además: Asociación Maestros v. Comisión, 159 D.P.R. 81 (2003); Federación v. Molina, 160 D.P.R. 571 (2003).

 Dispone, además, el Reglamento Núm. 6385 de la Comisión de Relaciones del Trabajo del Servicio Público de 26 de enero de 2002 que las referidas sesiones especiales serán públicas y comenzarán con una exposición oral de cada parte sobre cómo debe quedar constituida la unidad apropiada. Luego de celebrada la Sesión Especial, las partes podrán someter alegatos dentro del término que les conceda la Comisión de Relaciones del Trabajo del Servicio Público (Comisión). Luego de que la Comisión *540 haya obtenido toda la evidencia pertinente y cuente con las posiciones expresadas por las partes, entonces determinará cuál será la unidad apropiada y ordenará la celebración de una elección. Una vez la Comisión le notifique a las partes la Determinación de Unidad Apropiada, éstas tendrán catorce días para presentar las excepciones. Luego de celebrada la elección, y si no hay objeciones, la Comisión emitirá una Certificación de Representante Exclusivo y ordenará el cierre y archivo del caso. Art. Ill, Sec. 309(D), (G) y (H) del Reglamento Núm. 6385, ante.

 La Ley Núm. 45 de 25 de febrero de 1998 (3 L.RR.A. see. 1451 et seq.) dispone específicamente sobre la revisión judicial de laudos de arbitraje y sobre las determinaciones que adjudican controversias sobre prácticas ilícitas. Véase Secs. 6.1(g) y 9.3(j) de la Ley Núm. 45, ante, 3 L.RR.A. secs. 1451p y 1452c. Sin embargo, no dispone específicamente sobre la revisión de determinaciones de unidad apropiada ni sobre las peticiones de representación.

 En la referida moción solicitó que se excluyeran ciertos puestos de la unidad apropiada por entender que estaban íntimamente ligados a la gerencia.

 En dicha resolución se incluyeron determinaciones de hecho y conclusiones de derecho, y fue firmada por el Presidente de la Comisión.

 Dicho esquema de revisión judicial de decisiones de la Junta de Relaciones del Trabajo fue incorporado de la jurisdicción federal a la nuestra. A esos efectos hemos resuelto que las decisiones y órdenes dimanantes de casos de representación sólo son revisables mediante un ataque colateral imbricado en una decisión relativa a alguna práctica ilícita del trabajo. Véanse: Federación v. Molina, ante; U.P.R. v. Asoc. Pur. Profs. Universitarios, 136 D.P.R. 335 (1994); Luce & Co. v. Junta de Relaciones del Trabajo de P.R., 82 D.P.R. 96 (1961); Junta de Relaciones del Trabajo v. Ortega, 79 D.P.R. 760 (1956).

 A dicho resultado se llega de una lectura conjunta de los incisos (3) y (4) del Art. 5, y el Art. 9 de la Ley de Relaciones del Trabajo de Puerto Rico, 29 L.P.R.A. sees. 66(3) y(4), y 70.

 En otras palabras, la Ley Núm. 45, ante, no limita la revisión judicial de decisiones de la Comisión a decisiones finales sobre prácticas ilícitas del trabajo.

 Citando al Tribunal Supremo de Estados Unidos en Bennett v. Spear, 520 U.S. 154 (1997).

 Se resolvieron de forma final las excepciones presentadas por la Administración de Reglamentos y Permisos sobre la unidad apropiada.

 Citando el Code of Federal Regulations, 5 C.F.R. sec. 2422.2(f)(1).

 Citando a Barnes Hospital, 306 NLRB 201 n. 2 (1992); Globe Iron Foundry, 112 NLRB 1200 (1955); Potomac Electric Power Co., 111 NLRB 553, 554 (1955); S.H. Kress Co., 137 NLRB 1244,1248 (1962); NLRB v. J.I. Case Co., 201 F.2d 597 (9no Cir. 1953); Stockton Roofing Co., 304 NLRB 699 (1991).

 A esos efectos, ni el Reglamento Núm. 6385 ni la Ley Núm. 45, ante, proveen una vista para estos casos. Es de notar que, contrario a lo anterior, el reglamento sí provee para la celebración de una vista —en donde cada parte presentará prueba— en casos donde existan controversias sobre la composición de las unidades apropiadas. Véase Sec. 305(B) del referido Reglamento.

 En Federación v. Molina, ante, resolvimos que la determinación que hace la Comisión al resolver si inicia o no una querella por prácticas ilícitas no constituye una “orden final” a los efectos de revisarla ante el foro apelativo intermedio, ya que dicha determinación depende en su totalidad de la discreción de la Comisión y, por consiguiente, no está sujeta a ser revisada judicialmente.