# 2009 DTA 96

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL II**

DEPARTAMENTO DE EDUCACIÓN
Apelado

v.

FEDERACIÓN DE MAESTROS DE PUERTO RICO
(UNIONADO: PROF. ADALBERTO GONZÁLEZ VEGA)
Apelante

Núm. KLAN-06-01459

San Juan, Puerto Rico, a 30 de junio de 2009

Panel integrado por su Presidenta, la Juez García García,
el Juez González Vargas y la Juez Coll Martí

Coll Martí, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Compareció el Sr. Adalberto González Vega y apeló de una Sentencia Desestimatoria del Tribunal de Primera Instancia en la que dicho foro se declaró carente de jurisdicción.

Nos compete en este momento, para la resolución de este recurso, entrar en materia de derecho laboral y analizar e interpretar el alcance de una ley y la intención legislativa tras de ella.

El señalamiento de error ante nos se circunscribe a que erró el foro de instancia al declararse sin

jurisdicción y desestimar el caso.

Resolvemos que el fundamento que utilizó el foro sentenciador para declararse sin jurisdicción, esto es, la presentación tardía del recurso, no es el fundamento correcto, pero el resultado sí lo es, ya que el Tribunal de Primera Instancia no tenía jurisdicción en este caso, sino que la ostenta este Tribunal de Apelaciones, según explicamos más adelante.

Veamos primeramente los hechos.

## I

El apelante, Adalberto González Vega, se desempeñaba como maestro de matemáticas de noveno grado en la Escuela Juan Ponce de León de la Región de Humacao donde llevaba aproximadamente 10 años trabajando. El 1 de septiembre de 2004 se celebró una vista informal del caso en su contra por alegadamente haber incurrido en conducta incorrecta y lesiva al buen nombre del Departamento de Educación a través de actos de maltrato contra estudiantes en dicha escuela. Posteriormente, mediante carta fechada 10 de noviembre de 2004, el Departamento de Educación destituyó al profesor González Vega basándose en un informe de la Oficina de Inspección de Querellas Administrativas. Según se desprende del Informe, el profesor González Vega se expresaba sobre estudiantes, padres y maestros de la escuela, de manera soez, inapropiada, con doble sentido y en ocasiones con vocabulario de fuerte contenido sexual. Alegadamente también incurrió en agresión física contra un estudiante, por lo que fueron expedidas varias órdenes de protección a favor de los menores afectados. Así las cosas, el Secretario de Educación emitió una carta de destitución en la que determinó, entre otras cosas, cancelar todos los certificados de maestro que poseía el querellante a la fecha de la carta.

Oportunamente, el 17 de noviembre de 2004, la Federación de Maestros de Puerto Rico presentó una Solicitud de Quejas y Agravios ante la Comisión de Relaciones del Trabajo del Servicio Público (CRTSP). El proceso fue suspendido en varias ocasiones debido a que los estudiantes que provocaron el despido del maestro se ausentaban del mismo. Luego de varias suspensiones, finalmente se celebró la vista ante el árbitro, Sr. Andrés Feliciano Morales. No obstante, a la misma tampoco compareció la totalidad de los estudiantes. Sólo una de las estudiantes querelladas presentó su testimonio. Sin embargo, aun sin la presencia de sus testigos y mediando oposición del aquí apelante, el abogado del Departamento de Educación sometió su caso por las declaraciones juradas del resto de los estudiantes querellados.

Con relación a las declaraciones juradas sometidas por la Agencia, el querellante objetó la admisibilidad de éstas bajo el planteamiento de que constituyen prueba de referencia por no haber comparecido a la vista quienes prestaron tales declaraciones. De esta manera alega que sería improcedente en derecho sustentar un fallo contra el querellante, ya que violaría el debido procedimiento de ley al no permitirle el derecho al careo.

El árbitro, señor Morales Feliciano, emitió un laudo el 4 de abril de 2006 en el que se confirmaba la medida disciplinaria del Secretario de Educación. El mismo se le notificó a la Federación de Maestros, no así a la representación legal del aquí apelante. Al percatarse del error, la CRTSP notificó al apelante el laudo el 7 de abril de 2006. [1]

El 5 de mayo de 2006, el señor González Vega presentó ante el Tribunal de Apelaciones un "Escrito de Revisión", a los fines de revisar el laudo emitido por la CRTSP. Asimismo, también indicó no haber recibido notificación de su archivo en autos, por lo que alegó que el término para recurrir no había comenzado.

Mediante Sentencia de 30 de mayo de 2006, notificado su archivo en autos el 6 de junio del mismo año, este tribunal apelativo se declaró sin jurisdicción para revisar el laudo, emitido por una agencia administrativa, al disponer que éstos se revisan en el Tribunal de Primera Instancia. [2]

A tenor con la Sentencia de este Foro, el 22 de junio de 2006, el señor González Vega presentó entonces el *"Escrito de Revisión de Laudo"* ante el Tribunal de Primera Instancia, a los fines de revisar la decisión de la Comisión antes mencionada y pedir la restitución del señor González Vega a su trabajo, así como el pago retroactivo de su salario.

Por su parte, el Departamento de Educación presentó en el Tribunal de Primera Instancia una *"Moción Solicitando Desestimación del Recurso"* el 16 de agosto de 2006. Mediante el mismo, el Departamento solicitó la desestimación del recurso por falta de jurisdicción. Indicó en su escrito que el recurso se presentó ante el Tribunal de Primera Instancia pasado el término de 30 días. Sostuvo que el laudo se depositó en el correo el 10 de abril de 2006 y que el señor González presentó el 15 de mayo de 2006 ante el Tribunal de Apelaciones un recurso de Revisión del laudo emitido por la CRTSP, esto es, a los treinta y cinco (35) días. Aduce que el recurso fue presentado tardíamente, por lo que debe ser desestimado, toda vez que el Tribunal de Primera Instancia ya carece de jurisdicción para atender el mismo.

El 3 de octubre de 2006, el Departamento de Educación compareció ante el Tribunal de Primera Instancia y presentó *Moción Reiterando Desestimación del Recurso.*

El Tribunal de Primera Instancia dictó Sentencia el 10 de octubre de 2006 y declaró Con Lugar la *"Moción de Desestimación"* presentada por el Departamento de Educación el 16 de agosto de 2006, por lo que desestimó el recurso de Revisión por falta de jurisdicción.

El 18 de octubre de 2006, el recurrente señor González presentó ante el foro de instancia una *Moción en Oposición a Petición de Desestimación del Recurso*, en la que sostiene que fue el 5 de mayo y no el 15 de mayo, como expresa el patrono recurrido, cuando presentó ante el Tribunal de Apelaciones su recurso de Revisión, a los veinticinco (25) días de emitido el laudo. Para fundamentar su alegación, acompañó portada del Escrito de Revisión donde se demuestra que, en efecto, el recurso se presentó el 5 de mayo de 2006.

El profesor González ha recurrido ante nos de la Sentencia de 10 de octubre de 2006 en la que el Tribunal de Primera Instancia acogió la *Moción de Desestimación* presentada por el Departamento de Educación y desestimó el recurso de Revisión por falta de jurisdicción. En su escrito de Apelación, el profesor González señala la comisión del siguiente error:

"a. COMETIÓ ERROR EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR EL RECURSO DE REVISIÓN DE LAUDO POR FALTA DE JURISDICCIÓN."

Por su parte, el Departamento de Educación arguye que el tribunal con jurisdicción para atender revisiones de laudos de arbitraje es el Tribunal de Primera Instancia y no el Tribunal de Apelaciones. Plantea que el término jurisdiccional para recurrir al Tribunal de Primera Instancia solicitando la revisión judicial de un laudo de arbitraje es de 30 días, contados a partir de la notificación a las partes del laudo de arbitraje.

**II**

El profesor González Vega apeló ante este Tribunal de un laudo emitido por la Comisión de Relaciones del Trabajo del Servicio Público, organismo creado por virtud de la Ley 45 de 25 de febrero de 1998, según enmendada, 3 L.P.R.A. § 1451 y ss. Esta Ley le confirió a los empleados públicos no cubiertos por la Ley 130 de 8 de mayo de 1945, 29 L.P.R.A. § 69 y ss, el derecho a la sindicación.

Se trata de una ley de aplicabilidad general a la Rama Ejecutiva, con limitadas excepciones, que requiere que la organización sindical y la negociación colectiva se den dentro de los parámetros establecidos en la ley, los cuales se circunscriben a: 1) acomodar, dentro de las realidades fiscales en que se desenvuelve el Gobierno, el costo correspondiente al mejoramiento de las condiciones de trabajo de los empleados públicos; 2) evitar

interrupciones en los servicios que prestan las agencias gubernamentales, y 3) promover la productividad en el servicio público. Exposición de Motivos de la Ley 45, *supra*, pág. 148; *Federación de Maestros de Puerto Rico v. María M. Molina Torres*, 160 D.P.R. 571, 579 (2003).

El caso ante este Foro requiere la revisión de un laudo emitido por la CRTSP que es el organismo creado por la Ley 45 para hacer cumplir sus disposiciones y al cual se le confirieron poderes y facultades cuasi legislativas y cuasi judiciales. *Asociación de Maestros de Puerto Rico v. Comisión de Relaciones del Trabajo del Servicio Público de Puerto Rico*, 159 D.P.R. 81, 90 (2003).

Bajo la doctrina de delegación de poderes, el organismo administrativo goza de las funciones que se le han encomendado legislativamente y aquellas que surgen de su actividad o encomienda primordial. Las actuaciones administrativas deben ajustarse al poder delegado, y en ausencia de un mandato legislativo expreso o implícito, aquella actuación administrativa que no obedezca al poder conferido sería una actuación *ultra vires* de la agencia y, por ende, nula. *Caribe Communications, Inc. v. Puerto Rico Telephone Co.*, 157 D.P.R. 203, 213-214 (2002).

Conforme con nuestro estado de derecho, las agencias administrativas sólo tienen los poderes otorgados expresamente por su ley habilitadora y aquellos que sean indispensables para llevar a cabo los conferidos. *Raimundi v. Productora*, 162 D.P.R. 215, 224 (2004).

La Ley 45, *supra*, le concedió a la CRTSP ciertos poderes, entre los cuales se encuentran los siguientes:

"§ 1452t. Poderes, deberes, responsabilidades, facultades y funciones de la Comisión de Relaciones del Trabajo del Servicio Público.

…

(g) Conceder los remedios y emitir órdenes que sean necesarias y convenientes para cumplir con los propósitos de esta Ley. Esto incluye, entre otras, órdenes provisionales o permanentes de cesar y desistir; órdenes para la reposición de empleados suspendidos o destituidos, con o sin el abono de la paga atrasada dejada de percibir y la concesión de todos los beneficios marginales a que los empleados hubiesen tenido derecho durante el período de suspensión o destitución y órdenes imponiendo sanciones a agencias, organizaciones sindicales o representantes exclusivos, incluyendo la descertificación de estos últimos.

…

(j) Designar un panel de conciliadores y de árbitros que tendrán a su cargo todo lo relativo a la atención de controversias sobre aplicación de los convenios colectivos y cuando surjan estancamientos en los procesos de negociación de los convenios.

…

(l) Nombrar oficiales examinadores quienes podrán realizar investigaciones, presidir audiencias y llevar a cabo cualquier otra tarea que la Comisión le asigne.

(r) La Comisión tendrá, además, amplia facultad para interponer cualesquiera remedios legales que sean necesarios para hacer efectivos los propósitos de esta Ley y hacer que se cumplan sus reglas, reglamentos y órdenes, resoluciones y determinaciones."

Las disposiciones citadas demuestran que la CRTSP es una agencia de la Rama Ejecutiva con poderes

específicamente delegados que surgen de la Ley 45, *supra*, tales como ordenar la reinstalación de empleados a sus puestos con beneficios dejados de percibir. Es una agencia con poderes investigativos y *cuasi* adjudicativos. Estos poderes se ejercen por los Comisionados que por disposición de ley designan un panel de árbitros para resolver controversias sobre los convenios colectivos y cuando exista estancamiento en las negociaciones colectivas. Véase 3 L.P.R.A. § 1451(d) y (e).

Cuando las agencias ejercen su poder adjudicativo, en efecto, realizan funciones análogas a las que realizan los tribunales. *Caribe Communications, Inc. v. Puerto Rico Telephone Co., supra.*

El arbitraje laboral de la Ley 45, *supra*, distinto al arbitraje laboral que aplica a patronos y uniones regidas por la Ley 130, *supra*, o por la Ley Nacional de Relaciones del Trabajo, *supra*, no es voluntario. Es obligatorio por disposición de ley; las partes vienen obligadas a acogerse al servicio de arbitraje provisto por la CRTSP, 3 L.P.R.A. § 1452. A diferencia de las relaciones obrero-patronales privadas o de corporaciones públicas, las partes en controversia bajo la Ley 45 no pueden acudir al arbitraje privado o al que provee el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos (Negociado).

La naturaleza de la unidad de mediación y arbitraje de la CRTSP es diferente a la del Negociado. Los casos atendidos por el Negociado responden a un arbitraje en el cual las partes, por acuerdo y voluntariamente, optan por someter sus controversias laborales a sus árbitros, pero también pueden optar por adquirir servicios de árbitros privados.

Por el contrario, los árbitros de la CRTSP, por delegación de la CRTSP, ejercen poder cuasi judicial delegado por la legislatura a la CRTSP. Los laudos que emiten sobre convenios negociados bajo la Ley 45 tienen un origen y naturaleza diferentes a los laudos laborales privados. Constituyen decisiones finales de una agencia administrativa a la cual se le delegó una función cuasi judicial con la autoridad para conceder remedios y órdenes necesarias para el cumplimiento de los propósitos de la ley, tal como la reinstalación de un empleado público destituido de su empleo.

Resulta pertinente mencionar que a los empleados públicos, distinto a los empleados de entidades privadas, les asisten derechos constitucionales, uno de los cuales es el derecho a un debido proceso de ley que opera en dos dimensiones: la procesal y la sustantiva. La vertiente sustantiva persigue proteger y salvaguardar los derechos fundamentales de la persona y la procesal le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y de propiedad del individuo, como lo es la retención de un empleo público de carrera, se haga a través de un procedimiento que sea justo y equitativo.

El derecho a un debido proceso de ley procesal requiere la notificación de cargos al afectado con una descripción de la prueba en su contra y la celebración de una vista informal previa al despido para que el empleado exprese su versión de lo sucedido. *U. Ind. Emp. A.E.P. v. A.E.P.,* 146 D.P.R. 611 (1998).

El arbitraje de la CRTSP, como veremos más adelante, es el foro actual de los empleados públicos de agencias de la Rama Ejecutiva para casos disciplinarios, destituciones y todo asunto o controversia sobre derechos concedidos por la Ley de Recursos Humanos del Servicio Público, Ley 184 de 3 de agosto de 2004, 3 L.P.R.A. § 1461 y ss., o por cualquier otra ley especial que le conceda derechos.

Toda la casuística de arbitraje, incluyendo el arbitraje laboral privado de patronos cubiertos por la Ley Taft-Hartley o por la Ley 130, descansa en la voluntariedad de las partes de someterse a un procedimiento de arbitraje en sustitución del foro judicial. El Tribunal Supremo ha expresado:

"Los componentes de la relación obrero-patronal, a base de la libertad de contratación y de lo que el proceso de negociación colectiva puede permitir a las partes, tienen la facultad de establecer el sistema de

procesamiento y adjudicación de las quejas y agravios que prevalecerán durante la vigencia del convenio colectivo. Fernández Quiñones, Demetrio, *El Arbitraje Obrero-Patronal,* 1ra. Edic., Colombia Legis S.A., 2000, pág. 236. De modo que cuando las partes voluntariamente escogen el arbitraje como mecanismo para dilucidar las controversias que surgen como resultado del convenio colectivo sustituyen el foro judicial por el foro de arbitraje." *Condado Plaza v. Asociación de Empleados de Casino,* 149 D.P.R. 347 (1999).

En *U.C.P.R. v. Triangle Engineering Corp.,* 136 D.P.R. 133, 142 (1994), el Tribunal Supremo expresó que ante un convenio voluntario de arbitraje, la abstención judicial es lo más prudente, y en *Sixto Quiñones v. Asociación de Condómines,* 161 D.P.R. 668, 673 (2004), también expresó "...que las partes que voluntariamente se someten a un procedimiento de arbitraje, están obligadas por el mismo, salvo aquellas situaciones en que la jurisprudencia haya establecido que medie justa causa para obviarlo". (Énfasis nuestro.)

La Ley 130, *supra,* y la Ley Taft-Hartley, *supra,* no reglamentan el arbitraje obrero-patronal; guardan completo silencio sobre el arbitraje, pues éste se concibe como algo totalmente voluntario. El arbitraje es el *quid pro quo* del derecho a la huelga.

En Puerto Rico no hay legislación específica que regule este arbitraje, y la Ley 376 de 8 de mayo de 1951, 32 L.P.R.A. §§ 3201-3229, que reglamenta el arbitraje comercial, no aplica al arbitraje entre patronos y empleados. *J.R.T. v. Otis Elevador, Co.,* 105 D.P.R. 195, 202 (1976).

En *U.I.L. de Ponce v. Destilería Serrallés,* 116 D.P.R. 348 (1985), el Tribunal Supremo, ante la ausencia de un procedimiento a seguir en los casos que llegaban a los tribunales para que se revisase laudos de arbitraje que surgían como resultado de quejas y agravios que nacían voluntariamente de convenios colectivos entre las partes, resolvió que esos laudos se atenderían como revisiones administrativas. Allí se dijo:

*"Resolvemos, en su consecuencia, que a partir de la fecha de la presente decisión, la parte que interese impugnar un laudo de arbitraje emitido en un caso obrero-patronal- ya sea por las causas de nulidad tradicionalmente reconocidas o porque el mismo, de ser ello requerido, no ha sido resuelto conforme a derecho-vendrá obligada por las disposiciones pertinentes y aplicables de las antes mencionadas reglas que rigen los recursos para la revisión de las decisiones administrativas ante el Tribunal Superior."*

Esta decisión debe entenderse en el contexto de que, a la fecha en que se tomó, el foro para apelar las decisiones administrativas era el Tribunal de Primera Instancia.

Por otro lado, es un claro precepto de hermenéutica que las disposiciones específicas de una ley serán interpretadas conforme a la intención legislativa y a la política pública que la inspira. Las leyes se deben interpretar y aplicar en consonancia con el interés social y el fin esencial del mismo, a la luz, claro está, de las situaciones de hechos que tenga el tribunal ante sí.

La interpretación de un estatuto debe observar y acatar el propósito perseguido en la implantación de la ley. Por esta razón, el Tribunal Supremo ha expresado que las diferentes secciones de un estatuto deberán interpretarse en conjunto, de manera armoniosa, mas no aisladamente para evitar resultados desatinados, confusos y absurdos. *Caribe Communications, Inc. v. Puerto Rico Telephone Co., supra.*

A tono con este precepto de interpretación, observemos lo que disponen diversas secciones de la Ley 45. Esta Ley dispone, desde su aprobación en el 1998, que todo convenio entre el representante exclusivo y la agencia incluya procedimientos para solución de quejas y agravios, incluyendo el arbitraje que pueda surgir durante la vigencia de un convenio. Además, requiere que las controversias sobre la aplicación e interpretación de sus cláusulas y toda controversia surgida al amparo de un convenio colectivo negociado entre las partes, sea dirimida a través de los mecanismos pactados en el convenio colectivo para el ajuste de quejas y agravios. 3 L.

P.R.A. § 1452. Como el arbitraje es obligatorio, las partes no tienen la opción de acudir al foro judicial u otro foro administrativo si así lo desean.

La Ley 45 también estableció que los procedimientos de la CRTSP se regirían "... según los términos que disponen las secciones 2101 *et seq ...*" de la Ley 170 de 12 de agosto de 1988, 3 L.P.R.A. § 2101 *et seq*. En cuanto a revisión judicial, se dispuso en la sección 9.3(j) el procedimiento para solicitar revisión judicial en los casos de prácticas ilícitas, 3 L.P.R.A. § 1452c(j), mientras la sección 10.1 concede jurisdicción a este tribunal para entender discrecionalmente en los recursos de revisión de órdenes y resoluciones finales de la CRTSP. 3 L.P.R.A. § 1452d. Al Tribunal de Primera Instancia le concede jurisdicción para poner en vigor órdenes y resoluciones finales de la CRTSP una vez revisadas por el Tribunal de Circuito de Apelaciones, actualmente el Tribunal de Apelaciones. 3 L.P.R.A. § 1452e. Véase *Mario Pérez Santos v. CRTSP,* 158 D.P.R. 180, 189 (2002).

Por otro lado, la ley concede jurisdicción al Tribunal de Apelaciones cuando se impugnen los laudos de arbitraje por estancamiento en las negociaciones. 3 L.P.R.A. § 1451p(g).

Además de todo lo anterior, debemos señalar que la Ley 170, *supra*, que había sido enmendada por la Ley 44 de 10 de enero de 2004 para excluir a la Oficina de Conciliación y Arbitraje de la CRTSP de la definición de "agencia" que establece dicha ley, volvió a ser enmendada en febrero de 2006 para dejar sin efecto dicha exclusión. Por ende, no cabe duda de que la Oficina de Conciliación y Arbitraje de CRTSP es una agencia para todos los efectos de dicha Ley 44.

La CRTSP sustituyó, como el foro administrativo para dirimir controversias que surgieran de las leyes de personal que regían y rigen el servicio público, a la Junta de Administración del Sistema de Personal hoy conocida, en virtud de la nueva ley de personal, como Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH). Al aprobarse la Ley 45 en el 1998, la CASARH compartía jurisdicción en controversias sobre la anterior ley de personal con la CRTSP. Pero, el 7 de agosto de 2001, la Ley 96 enmendó la Ley 45 para que CASARH retuviera jurisdicción en controversias de personal sólo en casos de empleados no sindicados.

En consecuencia, al presente la CRTSP tiene jurisdicción sobre asuntos de personal y de interpretación de convenio de todo empleado sindicado al amparo de la Ley 45. Le corresponde, por tanto, a la CRTSP, por conducto de los árbitros designados, interpretar y armonizar la Ley 184, *supra*, que rige el personal del servicio público con los convenios colectivos que hayan firmado las agencias y sindicatos.

Los árbitros de la CRTSP que atienden las querellas de empleados sindicados son los mismos árbitros que atienden el Arbitraje Compulsorio, definido en la ley como el procedimiento mediante el cual las partes, luego de agotar el procedimiento de conciliación establecido en la ley, vienen obligados a someter la controversia sobre la negociación de un convenio colectivo ante la consideración de un árbitro designado por la CRTSP. 3 L.P.R.A. § 1451p.

Lo expresado es otra diferencia sustancial entre el concepto arbitraje que emana de la Ley 45 y el que emana de las otras dos leyes laborales antes mencionadas. En estas últimas no existe obligación de someterse a arbitraje cuando ocurre un estancamiento en procesos de negociación colectiva.

Hay que tener presente, que los laudos de arbitraje que emiten los árbitros del Negociado de Conciliación y Arbitraje del Departamento del Trabajo se basan en un acuerdo voluntario de las partes y se refieren a controversias de múltiples patronos privados y diferentes corporaciones públicas que operan de manera independiente. La Ley 45, *supra*, por el contrario, rige una rama de gobierno, la Rama Ejecutiva, y obliga al arbitraje compulsorio.

Las agencias no son entidades autónomas e independientes; la gerencia de su capital humano, sea sindicado o no sindicado, requiere cierto grado de uniformidad. Un laudo de arbitraje al amparo de la Ley 45 constituye una decisión final de la agencia administrativa que es la CRTSP.

Dicho todo lo anterior, enfatizamos que la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, Ley 201 de 22 de agosto de 2003, según enmendada, establece que este Tribunal tiene jurisdicción para revisar mediante recurso de revisión judicial, que acogerá como cuestión de derecho, las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas.

Hemos visto, pues, que la CRTSP es una agencia administrativa con poderes definidos, y los laudos que emiten los árbitros en quienes la Comisión, por disposición de ley, delega la función de adjudicar controversias que nacen de los convenios colectivos, son decisiones administrativas finales revisables ante este Foro.

Le corresponde a estos árbitros interpretar los convenios colectivos negociados dentro de los parámetros establecidos en la Ley 45 y le corresponde resolver controversias al igual que a CASARH con relación a empleados no sindicados, levantadas por los empleados sindicados al amparo de la Ley 184, *supra*, que rige las normas básicas del personal gubernamental.

### III

Por todo lo anterior, entendemos que era este Tribunal de Apelaciones el que tenía jurisdicción para atender el *Escrito de Revisión* presentado correctamente el 5 de mayo de 2006 por el señor González Vega ante este Foro. Éste es el fundamento por el cual el Tribunal de Primera Instancia debió declararse sin jurisdicción para desestimar el caso y no el fundamento de que se había presentado tardíamente el recurso.

El proceso seguido en este caso no ha sido uno diáfano ni libre de ambigüedades para el apelante. En primer lugar, el Sr. Adalberto González Vega recibió un laudo de arbitraje escrito en una forma un tanto digresiva, que cita al Libro de Proverbios y al Rey Salomón, pero carece de la requerida advertencia de a dónde debe dirigir su apelación o solicitud de revisión en caso de no estar de acuerdo con la determinación notificada. Dicha notificación fue, por lo tanto, defectuosa.

La Ley de Procedimiento Administrativo Uniforme (LPAU) establece, en cuanto a la notificación de las decisiones administrativas, en su sección 2164, que "la orden o resolución advertirá el derecho de solicitar la reconsideración ante la agencia o de instar el recurso de revisión como cuestión de derecho ante el Tribunal de Apelaciones, así como las partes que deberán ser notificadas del recurso de revisión, con expresión de los términos correspondientes. Cumplido este requisito, comenzarán a correr dichos términos." 3 L.P.R.A. § 2164.

En *Maldonado v. Junta,* 171 D.P.R.___ 2007, **2007 J.T.S. 92**, interpretando la sección 2164, el Tribunal Supremo enunció que toda orden o resolución emitida por una agencia administrativa tiene que cumplir con el requisito de notificación correcta. Reiteró el Tribunal Supremo que el derecho a la notificación adecuada es parte del debido proceso de ley y que, por ello, una notificación defectuosa de una resolución no activa los términos para utilizar los mecanismos procesales ulteriores.

Ante la falta de notificación de a dónde dirigir su Apelación, el apelante acudió ante este Tribunal de Apelaciones el 5 de mayo de 2006, esto es, dentro del término de treinta días que tenía para apelar. Este Tribunal determinó que no tenía jurisdicción al decretar que todos los laudos de arbitraje, sean privados o bajo la Ley 45 que nos ocupa, se revisan por el Tribunal de Primera Instancia. Obedeciendo el decreto de este foro, el apelante dirigió entonces su esfuerzo al tribunal de primera instancia que, al igual que este foro, se declaró sin jurisdicción, pero debido a una incorrectamente alegada tardanza del apelante al presentar su recurso original ante este Tribunal.

Como consecuencia de todas las acciones descritas, el apelante quedaría sin foro alguno donde dilucidar en sus méritos una Apelación del laudo emitido el 4 de abril y notificado el 10 de abril de 2006 en forma incompleta.

Es innegable que el apelante había acudido a tiempo ante este Tribunal de Apelaciones en la primera ocasión en que lo hizo, el 5 de mayo de 2006, y que no puede adjudicársele tardanza o dejadez alguna. Ante ello, ante la realidad de que la jurisdicción de los tribunales en casos de apelaciones de laudos de arbitraje bajo la Ley 45, *supra*, es motivo de controversia y no ha sido abordada por el Tribunal Supremo y habiéndose declarado sin jurisdicción otro Panel de este Tribunal de Apelaciones, es nuestro parecer que el Tribunal de Primera Instancia no debió desestimar el recurso del apelante. No obstante y en ánimo de salvaguardar el derecho del apelante a que se le brinde un debido proceso, que no es otra cosa que un proceso justo, claro y comprensible, determinamos que el Sr. Adalberto González Vega no fue notificado adecuadamente por la CRTSP del laudo emitido el 4 de abril de 2006 al no contener dicha notificación alusión alguna a su derecho a apelar, a dónde apelar y carecer de la expresión de los términos correspondientes y que por ello el foro de instancia debió devolver el caso a la CRTSP para que notificara correctamente.

**IV**

Por todo lo anterior, REVOCAMOS la determinación del Tribunal de Primera Instancia al desestimar el caso por haberse presentado tardíamente y DEVOLVEMOS el mismo a la CRTSP para que lleve a cabo una notificación adecuada a todas las partes, en cumplimiento con la LPAU y con los requisitos de un debido proceso.

Lo acuerda y manda este Tribunal y lo certifica la Secretaria.

Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones

**ESCOLIOS 2009 DTA 96**

**1.** Véase Apéndice I del *Escrito de Revisión.*

**2.** Estamos conscientes de que sobre esta controversia jurisdiccional las opiniones están divididas en este Tribunal. El más alto Foro del país no se ha expresado sobre el particular.