ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| FEDERACIÓN CENTRAL DE TRABAJADORES UFCW, LOCAL 481, AFL-CIO<br><br>Recurrente<br><br>V.<br><br>DEPARTAMENTO DEL TRABAJO Y RECURSOS HUMANOS<br><br>Recurrido | TA2025RA00135 | Revisión judicial procedente de la Comisión Apelativa Del Servicio Público<br><br>Caso Núm.:<br>PR-24-001<br><br>Sobre:<br>Petición de representación |
|---|---|---|

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de octubre de 2025.

Comparece la Federación Central de Trabajadores Local 481 UFCW, Inc. (FCT o recurrente) y solicita la revisión de una *Resolución* emitida y notificada el 4 de junio de 2025 por la Comisión Apelativa del Servicio Público (CASP) en la que cerró y archivó su *Petición de Representación* en la Unidad de Empleados de Programas Centrales del Departamento del Trabajo y Recursos Humanos (DTRH o recurrido).[1] Según la CASP, al extenderse el convenio colectivo con el representante exclusivo de la Unidad —la División de Empleados Públicos de la Unión General de Trabajadores (UGT)—, no se podía presentar o celebrar una elección de representación o descalificación.

Por los fundamentos que se exponen a continuación, se confirma la *Resolución* emitida por la CASP.

---

[1] Apéndice VII del *Recurso de Revisión Administrativa* en el Sistema Unificado de Manejo de Casos (SUMAC) del Tribunal de Apelaciones, págs. 125-132.

**I.**

Este caso se originó el 2 de octubre de 2024, cuando la FCT presentó una *Petición de Representación* ante la CASP para representar a un grupo de empleados del DTRH.[2]

Tras varios trámites procesales, el 4 de junio de 2025, la CASP emitió y notificó una *Resolución* en la que ordenó el cierre y archivo de la *Petición de Representación* del apelante.[3] En esta, indicó que el 20 de agosto de 2004,[4] se certificó a la UGT como representante exclusivo de la Unidad de Empleados de Programas Centrales del DTRH, con la cual suscribió un convenio colectivo vigente del 29 de agosto de 2014 al 30 de junio de 2017. Señaló que el convenio se extendió hasta el 30 de junio de 2021, conforme al Artículo 8 de la *Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico*, Ley Núm. 3-2017, 3 LPRA sec. 9398. Asimismo, estableció que este se prorrogó hasta que concluya la negociación de un nuevo convenio, en virtud de la Sección 4.2 de la *Ley para Garantizar la Negociación Colectiva*, Ley Núm. 9-2021, 3 LPRA sec. 9398 nota.

La CASP concluyó que dicha extensión del convenio colectivo impide la radicación y celebración de elecciones de representación o descalificación de un representante exclusivo de negociación, según la Sección 303 (C) del Artículo 3 del *Reglamento de la Comisión de Relaciones del Trabajo del Servicio Público*, Reglamento Núm. 6385, Departamento de Estado. Finalmente, apercibió a la parte afectada sobre su derecho a solicitar reconsideración y, agotados los remedios administrativos, revisión judicial ante esta Curia apelativa.

---

[2] *Íd.*, Apéndice I, págs. 1-2.
[3] *Íd.*, Apéndice VII, págs. 125-132.
[4] Según se desprende del documento, la Certificación Núm. 043 fue enmendada el 15 de septiembre de 2009 y el 29 de octubre de 2015.

Inconforme, el 23 de junio de 2025, la FCT presentó una *Solicitud de Reconsideración*.[5] Entre otros señalamientos, expuso que la UGT no negoció un convenio colectivo, a tenor con la Sección 4.3 de la Ley Núm. 9-2021, *supra*, sec. 9398 nota, sino que solicitó iniciar negociaciones luego de la veda electoral como se evidenció en una carta fechada el 9 de septiembre de 2024.[6] Adujo que tal solicitud implicó que el convenio expiró el 20 de junio de 2024, máxime que no existía constancia de que se notificó al patrono una extensión dentro del término de quince (15) días. Entendió que el convenio de la UGT venció, lo que la habilitaba para presentar la *Petición de Representación*. Por ello, solicitó la continuación del proceso.

Al transcurrir el término para que la CASP resolviera la reconsideración sin hacerlo, la FCT presentó un recurso de revisión judicial ante este Foro apelativo y señaló el siguiente error:

> ERRÓ EN DERECHO LA HONORABLE COMISIÓN APELATIVA DEL SERVICIO PÚBLICO AL DESESTIMAR LA PETICIÓN DE REPRESENTACIÓN EN EL CASO F.C.T. V[.] D.T.R.H., CASO NÚM. PR-24-001, POR ALEGADAMENTE ESTAR IMPEDIDA POR LA LEY NÚM. 9-2017 Y NO CONSIDERAR QUE EL CONVENIO ENTRE EL DTRH Y LA UGT (REPRESENTANTE EXCLUSIVO) ESTABA VENCIDO POR LO CUAL PROCEDÍA ATENDER LA PETICIÓN DE REPRESENTACIÓN ACORDE A LO DISPUESTO EN LA LEY NÚM. 45-1998, SEGÚN ENMENDADA.

En esencia, la recurrente planteó que la CASP actuó de manera arbitraria y contraria a la *Ley de Relaciones del Trabajo para el*

---

[5] *Íd.*, Apéndice VIII, págs. 133-142.

[6] La referida carta dispone lo siguiente:

> Asunto: Intención de Negociar Nuevo Convenio Colectivo

> La Unión General de Trabajadores (UGT), en su calidad de representante exclusivo de los empleados del Departamento del Trabajo, manifiesta formalmente su intención de iniciar negociaciones para un nuevo convenio colectivo una vez finalice el actual periodo de veda. Este proceso se llevará a cabo conforme a lo establecido en la Ley Núm. 9 de 30 de junio de 2021, conocida como la "Ley para garantizar la negociación colectiva."

> Nos comprometemos a informarles de los integrantes de nuestro comité de negociación, así como a enviar la propuesta correspondiente para su evaluación oportuna.

> Reafirmamos nuestro compromiso de llevar a cabo negociaciones de buena fe, con el objetivo de alcanzar acuerdos que beneficien tanto a los trabajadores como al Departamento del Trabajo, contribuyendo así a un entorno laboral justo y productivo. [...]

*Servicio Público de Puerto Rico*, Ley Núm. 45-1998, según enmendada, 3 LPRA 1451 *et seq.,* al no atender su *Petición de Representación.* Indicó que en virtud del caso *Federación v. Molina,* 160 DPR 571 (2003), el Máximo Foro Judicial reconoció que este Tribunal tenía jurisdicción para revisar una determinación de la CASP cuando afectaba derechos constitucionales de las partes por haber actuado de forma arbitraria o en abuso de su facultad administrativa; ignoraba una prohibición expresa contenida en su Ley orgánica o interpretaba erróneamente la Ley.

En este contexto, la FCT alegó que la CASP actuó contrario a la Ley Núm. 45-1998, *supra,* al cerrar y archivar su *Petición de Representación* ante el fundamento de que existía un convenio vigente. Manifestó que, conforme al Artículo 11 (j) de la *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico,* Ley Núm. 66-2014, 3 LPRA sec. 9117, los convenios expirados o que expiraran durante la vigencia de dicho estatuto se extendieron hasta el 1 de julio de 2017, y luego hasta el 1 de julio de 2021 mediante la Ley Núm. 3-2017, *supra.* Sin embargo, arguyó que la Ley Núm. 9-2021, *supra*, autorizaba continuar las negociaciones de cláusulas no afectadas desde el 1 de julio de 2021 al 30 de junio de 2024. Empero, precisó que el término máximo para la negociación era de tres (3) años. Además, expresó que el 9 de septiembre de 2024, la UGT solicitó negociar un nuevo convenio colectivo, ya que el anterior en el DTRH había expirado, por lo que podía presentar la *Petición de Representación.* Por ello, consideró que la CASP actuó arbitraria e ilegalmente y que este Tribunal tenía jurisdicción para revisar su actuación.

Por su parte, el 2 de septiembre de 2025, la CASP presentó una *Comparecencia Especial en Cumplimiento de Resolución,* mediante la cual aclaró que no era parte del caso, sino que funcionó como foro

administrativo que emitió la determinación recurrida y solicitó ser eximida de añadir argumentos.

Posteriormente, el 18 de septiembre de 2025, la Oficina del Procurador General de Puerto Rico, en representación del DTRH, peticionó la desestimación de este recurso por falta de jurisdicción a tenor con el caso *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527 (2006). Sostuvo que la desestimación de una petición de representación sindical no era revisable ante este Tribunal, dado que no constituía una resolución final y el peticionario podía presentar otra al concluir la negociación del convenio colectivo.

A fin de auscultar nuestra jurisdicción y sin prejuzgar los méritos de la solicitud de desestimación del DTRH, el 25 de septiembre de 2025, emitimos una *Resolución*, en la que otorgamos un término a la agencia para responder ciertas preguntas.[7]

En cumplimiento con lo anterior, el 10 de octubre de 2025, el DTRH presentó una moción mediante la cual reiteró que la UGT firmó un convenio colectivo con la agencia, extendido en virtud de la Ley Núm. 3-2017, *supra*, y de la Ley Núm. 9-2021, *supra*, por lo que consideró el mismo vigente por disposición estatutaria. Sobre la carta enviada el 9 de septiembre de 2024 por la UGT para manifestar su intención de negociar un nuevo convenio, el recurrido indicó que ello no implicaba la expiración del convenio vigente. A su vez, expresó que al 2 de octubre de 2024, fecha en que la FCT presentó su *Petición de Representación*, no existía ni existe actualmente una negociación activa con la UGT. Además, sostuvo que, mientras no se aprobara otra ley y no concluyera la negociación de un nuevo convenio —lo que no ha ocurrido—, continuaba vigente la prohibición de radicar o celebrar elecciones de representación o descalificación, según la Sección 4.2 de la Ley Núm. 9-2021, *supra*, sec. 9398.

---

[7] Véase entrada núm. 7 en el expediente de SUMAC.

En atención a ello, el 16 de octubre de 2025, emitimos una *Resolución*, por medio de la cual concedimos a la recurrente un término para expresar su posición.

Al respecto, el 21 de octubre de 2025, la FCT puntualizó que la solicitud de la UGT del 9 de septiembre de 2024 evidenciaba la expiración del convenio anterior, pues, al no haberse negociado desde julio de 2024, este venció el 30 de junio de 2024. Alegó que los convenios no podían extenderse más de tres (3) años y toda disposición contraria era nula. Por tanto, adujo que su *Petición de Representación* cumplía con la Sección 303 (C) del Artículo 3 del Reglamento Núm. 6385, *supra*, que permitía radicar una petición bajo la Sección 300 (A)(1) o (4) entre sesenta (60) y noventa (90) días antes del vencimiento del convenio anterior o una vez expirado sin haberse firmado otro.

**II.**

**A. Jurisdicción**

La jurisdicción es el poder o la autoridad de un tribunal para considerar y decidir casos y controversias. *Muñoz Barrientos v. ELA et al.*, 212 DPR 714, 726 (2023); *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 385-386 (2020); *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 101 (2020); *Mun. de San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014). En ausencia de jurisdicción, un tribunal carece de facultad para adjudicar una controversia. *Allied Mgmt. Group v. Oriental Bank*, *supra*, pág. 386. Por ello, cada foro judicial tiene la responsabilidad indelegable de examinar, en primera instancia, el aspecto jurisdiccional de cada situación jurídica presentada ante sí. *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 500 (2019). Pues, ningún ente adjudicativo posee discreción para asumir jurisdicción donde no existe, ni las partes la pueden conferir voluntariamente. *Íd.*

La falta de jurisdicción es insubsanable y acarrea la nulidad del dictamen emitido. *Allied Mgmt. Group v. Oriental Bank*, *supra*, pág.

386. Cuando un tribunal carece de jurisdicción, debe declararlo y desestimar el recurso sin considerar sus méritos. *Torres Alvarado v. Madera Atiles, supra*, pág. 501; *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 250 (2012). Conforme a la Regla 83 del *Reglamento del Tribunal de Apelaciones*, según enmendado, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), R. 83, este Tribunal puede, a iniciativa propia o a petición de parte, desestimar un recurso por falta de jurisdicción.

### B. Revisión judicial

La revisión judicial faculta a este Tribunal a examinar las decisiones, órdenes y resoluciones finales de un foro administrativo. Art. 4.006(c) de la *Ley de la Judicatura*, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24y; Sec. 4.2 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9672. Su propósito es asegurar que el foro administrativo actúe dentro del poder delegado y la política legislativa. *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); D. Fernández Quiñones, <u>*Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*</u>, 3ra ed., Bogotá, Forum, 2013, pág. 669.

Las determinaciones de hechos de la agencia se sostendrán si se basan en la evidencia sustancial contenida en el expediente administrativo. Sec. 4.5 de la LPAUG, *supra*, sec. 9675. Sin embargo, las conclusiones de derecho se revisarán en todos sus aspectos. *Íd.*; *Vázquez y otro v. Con. Tit. Los Corales,* 2025 TSPR 56.

Previamente, los tribunales otorgaban deferencia a la interpretación administrativa si resultaba razonable y se basaba en su pericia técnica. *Íd.* No obstante, el Tribunal Supremo de Puerto Rico acogió la interpretación federal establecida en *Loper Bright Enterprises v. Raimondo*, 603 US 369 (2024), en cuanto a que los tribunales deben ejercer un juicio independiente al evaluar la actuación administrativa, sin otorgar deferencia a su interpretación

jurídica. *Íd.* Pues, los tribunales tienen una perspectiva más amplia para considerar estas controversias, guiado por la preservación de un sistema robusto del Derecho, reforzado por la confianza pública en los procesos administrativos y judiciales. *Íd., citando a South Porto Rico Sugar Co. v. Junta Azucarera*, 82 DPR 847 (1961).

Por otro lado, las cuestiones mixtas de hechos y de derecho se considerarán como controversias de derecho, por lo que serán revisables en toda su extensión. *Super. Asphalt v. AFI y otro*, 206 DPR 803 (2021); *Rivera v. A&C Development Corp.*, 144 DPR 450 (1997).

### B. Negociación de convenios colectivos

La Ley Núm. 45-1998, *supra*, reconoció el derecho de los empleados de las agencias del Gobierno de Puerto Rico a organizarse y negociar colectivamente mediante un representante exclusivo certificado por la CASP.[8] Sec. 4.1 de la Ley Núm. 45-1998, *supra*; *Depto. Estado v. UGT*, 173 DPR 93 (2008); *Depto. Educ. v. Sindicato Puertorriqueño, supra*, pág. 587; *ARPe v. CUTE*, 165 DPR 850 (2005); *Federación v. Molina, supra*; H. J. Pérez Rivera, <u>*Breve Tratado de Derecho Laboral de Puerto Rico: Relaciones Obreros Patronales*</u>, Ed. Situm, San Juan, 2024, pág. 129. Una vez la CASP certifica una unidad apropiada para fines de negociación colectiva, solamente podría existir una organización sindical que represente a los empleados. Secs. 4.3 y 4.4 de la Ley Núm. 45-1998, *supra*, secs. 1451e y 1451f. Los procedimientos para seleccionar los representantes exclusivos, clarificar la unidad apropiada, enmendar la certificación y descertificación eran de naturaleza investigativa y no adjudicativa. Sección 300 (B) del Reglamento Núm. 6385, *supra*; *Depto. Educ. v. Sindicato Puertorriqueño, supra*, pág. 539.

---

[8] En virtud del *Plan de Reorganización de la Comisión Apelativa del Servicio Público*, Plan de Reorganización Núm. 2 de 26 de julio de 2010, según enmendada, 3A LPRA Ap. XIII, la Asamblea Legislativa fusionó la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público y la Comisión de Relaciones del Trabajo del Servicio Público a la CASP.

En lo que respecta al término del convenio colectivo, la Sección 7.7 de la Ley Núm. 45-1998, *supra*, sec. 1451x, estableció que:

> Los convenios suscritos en virtud de esta Ley no podrán tener un término de vigencia original de más de tres (3) años. La vigencia de un convenio podrá ser prorrogada durante la renegociación, por acuerdo entre las partes o conforme a los términos que disponga el propio convenio incluyendo el Procedimiento de Quejas y Agravio pero excluyendo aquellas disposiciones de impacto económico, siempre que sea por un plazo definido y limitado. Esta extensión en ningún momento podrá interrumpir los términos de cualquier petición de certificación o descertificación y las peticiones de clasificación promulgados en esta Ley. Cualquier cláusula que sea contraria a esta prohibición será nula.

Es decir, un convenio colectivo no puede tener una vigencia original mayor de tres (3) años, aunque podrá ser prorrogado por acuerdo de las partes, siempre que se acuerde un plazo definido y limitado para la prórroga. Secs. 4.4 y 7.7 de la Ley Núm. 45-1998, *supra*, secs. 1451f y 1451x.

Ahora bien, durante los pasados años, la Asamblea Legislativa aprobó varias leyes que extendieron la vigencia de los convenios colectivos en el servicio público y dichas extensiones han operado como impedimento para la celebración de elecciones sindicales. A saber, el Artículo 12 de la Ley Núm. 66-2014, *supra*, sec. 9118, dispuso lo siguiente con respecto a la negociación de convenios vencidos:

> Los convenios colectivos expirados a la fecha del comienzo de vigencia de esta Ley o que expiren durante la vigencia de este Capítulo II, serán extendidos en cuanto a las cláusulas no económicas u otras cláusulas no afectadas por esta Ley, hasta la fecha en que termine la vigencia de este Capítulo. Dicha extensión constituirá impedimento para la presentación y celebración de elecciones de representación.
>
> Una vez terminada la vigencia de este Capítulo II, los sindicatos que al 1ro de julio de 2014 representaban a los empleados unionados en cada Entidad de la Rama Ejecutiva, podrán comenzar la negociación de nuevos convenios colectivos, incluyendo cláusulas económicas y no económicas, y las Entidades de la Rama Ejecutiva negociarán los mismos, conforme la normativa y derecho aplicable, y considerando primordialmente las realidades de la situación económica y fiscal de la Entidad de la Rama Ejecutiva y del Gobierno en general.

Posteriormente, el Artículo 8 de la Ley Núm. 3-2017, *supra*, sec. 9398, estableció que los convenios colectivos expirados a la fecha

del comienzo de la vigencia de esta Ley o que expiren durante la vigencia de esta, serán extendidos en cuanto a las cláusulas no económicas u otras cláusulas no afectadas por este estatuto hasta el 30 de junio de 2021. El referido artículo manifestó que dicha extensión constituiría impedimento para la presentación y celebración de elecciones de representación. *Íd.* Finalmente, la Sección 4.2 de la Ley Núm. 9-2021, *supra*, sec. 9398 nota, indicó que:

> Los convenios colectivos expirados al 30 de junio de 2021 o a la fecha del comienzo de la vigencia de esta Ley o que expiren durante la vigencia de esta, serán extendidos en cuanto a las cláusulas no económicas u otras cláusulas no afectadas por esta Ley, hasta tanto las partes concluyan la negociación de un nuevo convenio colectivo. Dicha extensión constituirá impedimento para la radicación y celebración de elecciones de representación o descalificación de un representante exclusivo de negociación.[9]

La Sección 4.3 de la Ley Núm. 9-2021, *supra*, sec. 9398 nota, dispuso lo que sigue:

> En caso de que el representante exclusivo de una unidad apropiada cubierta por esta ley desee no extender el convenio colectivo y comenzar negociaciones sin un convenio extendido, deberá notificarlo a la autoridad nominadora bajo la cual opera la unidad apropiada en cuestión, no más tarde de 15 días luego del inicio de la vigencia de esta ley. Esto no impedirá que en el curso de tales negociaciones las partes acuerden extender el convenio colectivo sujeto a la legislación correspondiente.

De acuerdo con la Sección 10.1 de la Ley Núm. 45-1998, *supra*, sec. 1452e, este Tribunal de Apelaciones tiene jurisdicción para revisar discrecionalmente las órdenes y resoluciones finales emitidas por la CASP, a la luz de la LPAUG, *supra*. *Depto. Educ. v. Sindicato Puertorriqueño, supra*, pág. 542; *ARPe v. CUTE, supra*. Además, la Sección 428 del Reglamento Núm. 6385, *supra*, puntualizó que:

> A. Se podrá solicitar revisión judicial únicamente de una Decisión y Orden final de la Comisión. No se considerará como Decisión y Orden final la determinación que tome la Comisión en una reconsideración de una resolución u orden parcial.
>
> B. Cualquier parte adversamente afectada por una Decisión y Orden final y que haya agotado todos los remedios provistos por la Comisión podrá presentar una solicitud de revisión ante

---

[9] Según el *Informe Positivo* del 10 de junio de 2021 sobre el Proyecto de la Cámara 766 que dio origen a la Ley Núm. 9-2021, *supra*, la intención legislativa fue extender las cláusulas no económicas de los convenios colectivos expirados al 30 de junio de 2021, a fin de evitar que los empleados públicos quedaran desprovistos de sus beneficios ante la falta de una extensión.

el Tribunal de Circuito de Apelaciones de conformidad con la Ley.

C. Transcurridos los términos de reconsideración ante la Comisión y de revisión ante el Tribunal de Circuito de Apelaciones, las órdenes de la Comisión serán finales y firmes.

Es decir, solamente son revisables las determinaciones que pongan fin a todas las controversias en el procedimiento administrativo y la parte adversamente afectada haya agotado los remedios administrativos. *Íd.* En *ARPe v. CUTE, supra*, págs. 871-872, el Tribunal Supremo precisó que una decisión de la CASP sobre la determinación de una unidad apropiada es revisable, debido a que concluía el trámite administrativo; reconocía derechos sustantivos a los empleados públicos y obligaba al patrono a negociar con el representante exclusivo sobre los términos y las condiciones de todos los empleados públicos incluidos en la unidad.

En otros asuntos, en *Federación v. Molina, supra*, el Tribunal Supremo discutió que la determinación sobre emitir una querella por alegadas prácticas ilícitas no era revisable judicialmente, dado que pertenecía al ámbito discrecional de la agencia, no constituía una orden final y formaba parte de la fase investigativa. Empero, reconoció que existían excepciones limitadas a la actuación arbitraria o abuso de discreción administrativa que afecta derechos de las partes, exceso de poder delegado o violación de ley o interpretación errónea de la ley. *Íd.*

Sin embargo, en *Depto. Educ. v. Sindicato Puertorriqueño, supra*, pág. 549, el Alto Foro Judicial determinó que otros procedimientos como la evaluación del interés sustancial o la desestimación de una petición de representación no era revisable. En lo que nos concierne:

> **[L]a determinación desestimando la petición no es final. Una determinación de la Comisión sobre estos asuntos es una sin perjuicio, ya que dentro del término de radicación que dispone la Sección 303 (C) del Reglamento de la Comisión --periodo de 90 a 60 días previo al vencimiento de un convenio colectivo o cuando no exista un convenio- -el peticionario puede volver a radicar una petición de**

**representación siempre y cuando cumpla con los requisitos de la Sección 302 del Reglamento de la Comisión. Por consiguiente, la desestimación de la petición presentada por el Sindicato no impide que esté pueda volver a iniciar un procedimiento para representar a la unidad apropiada en cuestión.** *Íd.* **(Énfasis nuestro).**

## III.

En el presente caso, la FCT esgrimió que la CASP incidió al cerrar y archivar su Petición de Representación, al no considerar que el convenio colectivo entre el DTRH y la UGT venció. Según resolvió la CASP, al extenderse el convenio colectivo con el representante exclusivo de la Unidad —la División de Empleados Públicos de la UGT—, no procedía radicar ni celebrar una elección de representación o descalificación.

Del expediente surgió que la CASP certificó a la UGT como representante exclusivo de dicha unidad el 20 de agosto de 2004, y que el convenio colectivo entre las partes estaba vigente durante el período del 29 de agosto de 2014 al 30 de junio de 2017. Según se desprende, dicho convenio fue extendido hasta el 30 de junio de 2021 en virtud del Artículo 8 de la Ley Núm. 3-2017, *supra*, sec. 9398, y prorrogado nuevamente hasta tanto se concluya la negociación de un nuevo convenio, conforme a la Sección 4.2 de la Ley Núm. 9-2021, *supra*, sec. 9398 nota. A la fecha de la *Resolución* recurrida —y aún al momento de examinar este recurso— no consta en el expediente evidencia de que las partes concluyeron la negociación de un nuevo convenio colectivo, ni que suscribieron uno distinto al actualmente extendido por disposición estatutaria.

A juicio de la recurrente, la carta remitida por la UGT el 9 de septiembre de 2024, en la cual expresó su intención de iniciar negociaciones luego de la veda electoral, demostraba que el convenio anterior expiró y, por tanto, que la prohibición para radicar una petición de representación había cesado. Argumentó además que, en virtud de la Sección 4.3 de la Ley Núm. 9-2021, *supra*, sec. 9398

nota, la falta de notificación oportuna de una extensión dentro del término de quince (15) días debía interpretarse como la no existencia de un convenio vigente, lo que la habilitó para presentar su petición.

No obstante, de una sosegada y detenida evaluación del expediente ante nuestra consideración se desprende que la CASP actuó correctamente al aplicar las disposiciones estatutarias que extendieron los convenios colectivos en el servicio público, particularmente el Artículo 8 de la Ley Núm. 3-2017, *supra*, sec. 9398, y la Sección 4.2 de la Ley Núm. 9-2021, *supra*, sec. 9398 nota. Tal Sección 4.2 de la Ley Núm. 9-2021, *supra*, sec. 9398 nota, establece que los convenios colectivos expirados o en vigor se extenderán hasta tanto las partes concluyan la negociación de un nuevo convenio colectivo, y que dicha extensión constituía un impedimento para la radicación o celebración de elecciones de representación o descalificación. Por tanto, mientras no se haya culminado la negociación de un nuevo convenio colectivo —lo cual no ha ocurrido en este caso—, continúa vigente la extensión estatutaria del convenio anterior y subsiste la prohibición de atender nuevas peticiones de representación sindical.

De esta manera, la comunicación de la UGT del 9 de septiembre de 2024 no podía interpretarse como prueba de la expiración del convenio vigente, sino como el ejercicio de la prerrogativa de esa organización sindical de iniciar el proceso de negociación de un nuevo convenio. El referido estatuto no requería una manifestación expresa adicional, sino que el convenio continuará en vigor hasta que se logre un nuevo acuerdo. En consecuencia, la determinación de la CASP de cerrar y archivar la *Petición de Representación* de la recurrente no fue arbitraria ni ilegal, sino el resultado de la aplicación de la legislación aplicable. Además, tal cierre fue decretado sin perjuicio, ya que la FCT preserva el derecho de presentar una nueva *Petición de Representación* entre noventa (90) y sesenta (60) días antes del

vencimiento del convenio colectivo o cuando no exista uno vigente. Véase Sec. 303 (C) del Reglamento Núm. 6385, *supra.*

De igual forma, al examinar los planteamientos de la FCT, no surge del expediente evidencia de actuación arbitraria, abuso de discreción administrativa, exceso de poder delegado, violación de ley o interpretación errónea de las disposiciones legales o reglamentarias aplicables. La mera inconformidad de la parte recurrente con la interpretación adoptada por la agencia no convierte su actuación en una de carácter arbitrario o ilegal.

Por los fundamentos antes expuestos, se confirma la *Resolución* emitida por la CASP.

**IV.**

Por los fundamentos que anteceden, se confirma la determinación recurrida.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones